# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| JAMES LOGAN, SR., on behalf of himself and all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>UNITED STATES RAILROAD RETIREMENT BOARD,<br><br>     Defendant. | Civil Action No. _____ |

## <u>COMPLAINT – CLASS ACTION</u>

Unbeknownst to them, railroad retirees[1] have been subjected for years to an unauthorized tax on the portion of their Tier II retirement benefits representing their after-tax payroll contributions into the Tier II system. The collective impact of this unauthorized tax amounts to millions of dollars per year for at least the past seven years—and likely for far longer than that. Railroad retirees are entitled to recover these contributions *in full* by treating a portion of their Tier II benefits as nontaxable. But the Railroad Retirement Board (the "Board") doesn't tell them that. Instead, the Board sends a Form RRB-1099-R each year directing them to report the full "total gross paid" amount as taxable income when the Board knows only a portion of that amount

---

[1] The term "railroad retiree" refers to any former railroad worker receiving benefits pursuant to the Railroad Retirement Act, including retirees who were employed in railroad labor positions and management positions.

is legally taxable.

While the Board has all the information it needs to tell retirees the taxable amount, it simply—and knowingly—doesn't. The additional revenue collected from this unauthorized scheme goes back to the Board instead of remaining in retirees' pockets where it belongs. The Board is failing to fulfill one of its fundamental fiduciary duties—ensuring railroad retirees receive the correct benefit amount.

Plaintiffs seek declaratory and injunctive relief, as well as restitution from the Board, for the amounts the government unlawfully took from them. Going forward, the Board should be stopped from enriching itself with money rightfully belonging to the people it serves, and it should be required to clearly report to each railroad retiree the taxable amount of his or her Tier II benefits. Until that happens, railroad retirees will continue to be injured by the Board, collectively losing out on many millions of dollars of the safety net they labored for years to earn and which the Board is charged with ensuring they receive.

## Parties

1.      Plaintiff James Logan, Sr., resides in Parker County, Texas. He is a railroad retiree receiving Tier II benefits under the Railroad Retirement Act.

2.      Defendant United States Railroad Retirement Board is an independent federal agency in the Executive Branch charged with administering the Railroad Retirement Act. The Board's headquarters is located at 844 North Rush Street, Chicago, Illinois 60611; it maintains a field office in this District at 819 Taylor Street,

Fort Worth, Texas 76102.

## Jurisdiction and Venue

3.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 5

U.S.C. § 702, 5 U.S.C. § 706, and 28 U.S.C. § 1346.

4.    Plaintiff James Logan, Sr.'s individual claims against the Board, as well as

the claims of each proposed class member, do not exceed $10,000.

5.    This action is for declaratory and equitable relief authorized by 28 U.S.C.

§ 2201 *et seq.*

6.    The Board's members—Erhard R. Chorlé, John Bragg, and Thomas R.

Jayne—are personally responsible for compliance with any mandatory or injunctive

decree.

7.    This Court has jurisdiction over the parties.

8.    Venue is proper under 28 U.S.C. § 1391(e) because Plaintiff James

Logan, Sr., resides in this District.

## Facts

**A.    Congress created the Railroad Retirement Board during the Great
Depression to provide financial security for railroad workers, retirees, and
their families.**

9.    Before the Board was established in 1935, railroad retirees received

retirement benefits from private industrial railroad pension plans. The Great

Depression of the early 1930s revealed significant defects in these plans. At that time,

private railroad pension plans were unable to meet the needs of railroad workers and

retirees due to deteriorating employment conditions and the accumulation of older railroad workers in the industry.

10.    These private railroad pension plans paid inadequate benefits, had limited provisions for disability retirement, and did not allow credits to be freely transferred from employer to employer. The plans were inadequately financed, and employers could terminate them at will at any time.

11.    In the mid-1930s, the national Social Security system was still in its planning stage, and Social Security benefits would not be available until January 1940. Additionally, the Social Security system would not give credit for service performed before 1937. However, conditions in the railroad industry necessitated immediate benefits payments based on prior service. Railroad workers sought a retirement system separate from the Social Security system that would broaden existing railroad retirement programs under a uniform national plan.

12.    In 1934, Congress established a unified national railroad retirement system, taking into account the circumstances of the railroad industry amid the Great Depression.

13.    The Railroad Retirement Act of 1934 established the Railroad Retirement Board, a federal agency that administers retirement, survivor, unemployment, and sickness benefits for U.S. railroad workers and their families.

**B.    The Board owes railroad retirees fiduciary duties.**

14.    Today, the Board derives its statutory authority from the Railroad

Retirement Act of 1974 and the Railroad Unemployment Insurance Act. The Board has full responsibility for administering the Railroad Retirement Act.

15.    Three Presidentially appointed members compose the Board:

(i)    a member recommended by railroad labor organizations;

(ii)    a member recommended by railroad employers; and

(iii)    the Chairman, who represents the public interest.

Board members serve five-year terms.

16.    The Board's relationship with railroad retirees is a trust relationship giving rise to fiduciary duties, which the Board has expressly accepted.

17.    For example, in its Performance Accountability Reports, the Board acknowledges "its fiduciary responsibilities to the rail community," stating "The RRB is committed to fulfilling its fiduciary responsibilities to the rail community." [2] The Board developed strategic objectives to facilitate achieving those fiduciary responsibilities, which include:

- Ensuring that trust fund assets are protected, collected, recorded, and reported appropriately.

---

[2] *Railroad Retirement Board Performance and Accountability Report*, RR. RET. BD. (Fiscal Year 2024), at 13, 15, https://www.rrb.gov/sites/default/files/2024-11/PAR2024_0.pdf (last accessed Feb. 28, 2025) ("2024 Account. Rep.");
*Railroad Retirement Board Performance and Accountability Report*, RR. RET. BD. (Fiscal Year 2023), at 13, 15, https://www.rrb.gov/sites/default/files/2023-11/PAR2023.pdf (last accessed Feb. 28, 2025) ("2023 Account. Rep.");
*Railroad Retirement Board Performance and Accountability Report*, RR. RET. BD. (Fiscal Year 2022), at 13, 15, 22, https://www.rrb.gov/sites/default/files/2022-11/par2022_0.pdf (last accessed Feb. 28, 2025) ("2022 Account. Rep.").

- ▪ Ensuring the accuracy and integrity of benefit programs.

- ▪ Ensuring the effectiveness, efficiency, and security of operations.

- ▪ Effectively carrying out responsibilities with respect to the NRRIT.[3]

The Board also states, "As part of our fiduciary responsibilities to the rail community, we must ensure that the correct benefit amounts are being paid to the right people." [4]

**C.    Railroad retirees receive two types of benefits—one equivalent to Social Security (Tier I) and another treated like a private pension (Tier II).**

18.    The railroad retirement system is separate from the Social Security system and is comprised of two tiers: Tier I and Tier II.

19.    Tier I benefits are generally equivalent to what a railroad retiree would have received under the Social Security system (Social Security equivalent benefits, or "SSEB").

20.    Tier II benefits, which are based on railroad service, are comprised of benefit amounts beyond what a retiree would have received under Social Security (non-Social Security equivalent benefits, or "NSSEB").

21.    From 1974 to 1981, Tier II benefits were financed solely by a railroad worker's employer.

22.    Since 1981, in addition to employer contributions, railroad workers have

---

[3] The NRRIT is the National Railroad Retirement Investment Trust. The sole purpose of the NRRIT is to manage and invest railroad retirement assets. It has no powers or authority over the administration of railroad retirement benefits, and it is subject to enforcement actions by the Railroad Retirement Board.
[4] 2024 Account. Rep., at 22; 2023 Account. Rep., at 22; 2022 Account. Rep., at 22.

been required to contribute after-tax payroll dollars into the Tier II retirement system—these after-tax contributions are mandatory.

23.     Tier I benefits are taxed in the same way as Social Security benefits.

24.     Tier II benefits are taxed differently—they are taxed like qualified private pension plans pursuant to the Railroad Retirement Solvency Act of 1983 and Section 72 of the Internal Revenue Code.

25.     Because Tier I and Tier II benefits are taxed differently, railroad retirees receive two different informational tax returns from the Board each year—one for Tier I SSEB benefits, and the other for Tier II and NSSEB benefits.

| Tier I Benefits | Tier II Benefits |
|---|---|
| Equivalent to Social Security benefits | Benefits are based on railroad service |
| Funded by statutory deductions | Funded by mandatory after-tax payroll contributions |
| Taxed like Social Security benefits | Taxed like qualified private pension plans |
| Retiree receives Form 1099-R informational tax return from the Board | Retiree receives Form RRB-1099-R informational tax return from the Board |

26.     According to the Board's 2024 Annual Report, revenues raised from income taxes on Tier II benefits are returned to the Board: "Revenue derived from taxing regular railroad retirement payments in excess of Social Security equivalent benefits is transferred to the RR Account."[5]

---

[5] *United States Railroad Retirement Board 2024 Annual Report*, RR. RET. BD., at 9 under "Federal Income Tax Transfers," https://rrb.gov/sites/default/files/2024-09/2024_Annual_Report.pdf (last accessed Feb. 28, 2025).

**D.    The portion of a railroad retiree's Tier II retirement benefits representing the retiree's mandatory after-tax payroll contributions to the Tier II system is not taxable.**

27.    From 1981 to 1983, a railroad retiree's Tier II benefits were tax exempt.

28.    Since 1984, a railroad retiree's Tier II benefits are taxable *except* for the amount representing the retiree's after-tax payroll contributions into the Tier II system.

29.    In the Railroad Retirement Act, Congress clearly stated that Tier II benefits are not subject to any tax beyond what is provided for in the Internal Revenue Code "under any circumstances whatsoever":

> Except as provided in subsection (b) of this section and the Internal Revenue Code of 1986, notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process *under any circumstances whatsoever*, nor shall the payment thereof be anticipated.

45 U.S.C. § 231m(a) ("Assignability; exemption from levy") (emphasis added).

30.    Taxes on Tier II benefits are calculated pursuant to Section 72 of the Internal Revenue Code; that section provides that such annuities are only taxed to the extent they represent income. Because the portion of Tier II benefits which represent a railroad retiree's investment into the Tier II system is not income, it is not taxable under the Internal Revenue Code. Because it is not taxable under the Internal Revenue Code, Section 231m(a) of the Railroad Retirement Act expressly prohibits that portion from being subject to any tax *under any circumstances whatsoever*.

31.    Accordingly, there is no statutory authority authorizing a tax on a railroad retiree's after-tax payroll contributions into the Tier II system.

**E.    The Board unlawfully subjects Tier II beneficiaries to an unauthorized tax each year, violating 45 U.S.C. § 231m(a).**

32.    The Board does not tell railroad retirees what portion of their Tier II benefits are taxable.

33.    Each tax year, the Board sends each railroad retiree two informational returns: (1) Form 1099-R for the retiree's Tier I benefits and (2) Form RRB-1099-R for the retiree's Tier II benefits. Below is an example Form RRB-1099-R:



**FORM RRB-1099-R**

34.    Box 3 of Form RRB-1099-R (Employee Contributions) represents the retiree's total after-tax payroll contributions into the Tier II retirement system. With few exceptions, this amount remains the same each year.

35.    Box 4 (Contributory Amount Paid) represents the gross amount of Tier II benefits paid in that tax year. This amount is partially taxable—it is taxable except for the portion representing the retiree's after-tax payroll contributions into the Tier II system. Form RRB-1099-R does not report to the retiree which portion of this amount is taxable.

36.     Boxes 5 (Vested Dual Benefit) and 6 (Supplemental Annuity) represent other NSSEB amounts paid in that tax year. These amounts are fully taxable.

37.     Box 7 (Total Gross Paid) represents the total gross NSSEB benefit paid in that tax year; it includes the Contributory Amount Paid, the gross amount of vested dual benefit payments, and the gross amount of supplemental annuity payments.

38.     Box 9 (Federal Income Tax Withheld) represents the total amount of federal income tax withheld from a retiree's NSSEB benefits.

39.     Nothing on Form RRB-1099-R directly communicates to a retiree which portion of their Tier II benefits was taxable for that tax year, nor the fact that taxability has not yet been determined.

40.     In fact, within a large box on Copy B of Form RRB-1099-R—in all capital letters and large font—the Board directs retirees to report the full amount listed in Box 7 as income, even though the Board knows that amount is not fully taxable:



41.     This action by the Board unlawfully directs a retiree to include the entire amount listed in Box 7 as taxable income, resulting in a net Tier II benefit amount less

than the one the Board is required to ensure the retiree receives.

42.    Railroad retirees rely on the accuracy of Form RRB-1099-R when preparing their taxes. That is especially so where, as here, Copy B of the Form directs them to "**REPORT THIS INCOME ON YOUR FEDERAL TAX RETURN.**" It further cautions "**THIS INFORMATION IS BEING FURNISHED TO THE INTERNAL REVENUE SERVICE.**"

43.    Understanding the relevant tax scheme and calculations, including how to determine the taxable amount of a retiree's Tier II benefits, is outside the ordinary railroad retiree's scope of knowledge. A railroad retiree would have to expend considerable time and effort studying multiple IRS publications (which are not legally binding) to attempt to unravel the tax scheme and complex calculations applicable to his or her Tier II benefits.

44.    By directing retirees to report the amount listed in Box 7 of Form RRB-1099-R as income, the Board violates 45 U.S.C. § 231m(a), which it is charged with administering.

45.    The Board has every piece of information it needs to report to each retiree the taxable amount of his or her Tier II benefits each year. Despite that, the Board does not provide railroad retirees with that information.

**F.    As a result of the Board's actions, Plaintiff James Logan, Sr. was subjected to an additional unauthorized tax on his Tier II benefits in violation of 45 U.S.C. § 231m(a).**

46.    Plaintiff Logan is a railroad retiree receiving Tier II benefits. He retired

in 2018 after 47 years of railroad service. During those 47 years, he contributed a total of $96,635—after taxes—into the Tier II system. None of those dollars are taxable.

47. Plaintiff Logan hires a tax preparer to prepare his taxes each year. She is an enrolled agent with the Internal Revenue Service with over 20 years of accounting experience and has prepared Mr. Logan's taxes for over ten years.

48. The Board sends Plaintiff Logan a Form RRB-1099-R each year.

49. Each year, Plaintiff Logan provides his informational returns to his tax preparer, including the Form RRB-1099-R the Board mails to him, to use when preparing his taxes.

50. Until mid-summer 2024, Plaintiff Logan and his tax preparer assumed the entire amount reported by the Board in Box 7 on Form RRB-1099-R was taxable income (because the form says it is). Form RRB-1099-R does not indicate that only a portion of the income listed on the Form is taxable.

51. For example, for tax year 2023, the Board sent Mr. Logan the Form RRB-1099-R shown below, directing him to report $31,204.68 (Box 7) as income:



| PAYER'S NAME, STREET ADDRESS, CITY, STATE, AND ZIP CODE | 2023 | ANNUITIES OR PENSIONS BY THE RAILROAD RETIREMENT BOARD |
|---|---|---|
| UNITED STATES RAILROAD RETIREMENT BOARD 844 N RUSH ST CHICAGO IL 60611-1275 | 3. Employee Contributions  96,635.74 | |
| PAYER'S FEDERAL IDENTIFYING NO. 36-3314600 | | |
| 1. Claim Number and Payee Code | 4. Contributory Amount Paid  30,688.68 | COPY B - |
| 2. Recipient's Identification Number | 5. Vested Dual Benefit | REPORT THIS INCOME ON YOUR FEDERAL TAX RETURN. IF THIS FORM SHOWS FEDERAL INCOME TAX WITHHELD IN BOX 9 ATTACH THIS COPY TO YOUR RETURN. |
| Recipient's Name, Street Address, City, State, and Zip Code  JAMES LOGAN | 6. Supplemental Annuity  516.00 | |
| | 7. Total Gross Paid (Sum of boxes 4, 5 and 6)  31,204.68 | |
| | 8. Repayments  -0- | THIS INFORMATION IS BEING FURNISHED TO THE INTERNAL REVENUE SERVICE. |
| | 9. Federal Income Tax Withheld  5,580.00 | |
| | 10. Medicare Premium Total | |
| FORM RRB-1099-R | | |

52.     Before mid-summer 2024, Plaintiff Logan's tax preparer referenced the "total gross paid" (Box 7) amount listed on Form RRB-1099-R to prepare his taxes.

53.     Until mid-summer 2024, neither Plaintiff Logan nor his tax preparer knew he was entitled to recover his payroll contributions to the Tier II system—$96,635—over the life of his annuity and therefore a portion of his Tier II benefits is not taxable.

54.     The Board did not effectively communicate to Plaintiff Logan that only a portion of the income it reported to him on Form RRB-1099-R each year was taxable. To the contrary, it directed him to report the entire amount listed in Box 7 as taxable income.

55.      The Board did not effectively disclose to Plaintiff Logan the tax consequences or relevant tax scheme applicable to his Tier II benefits.

56.     Despite hiring a qualified and experienced tax professional to prepare his taxes, Plaintiff Logan was nonetheless unlawfully taxed on amounts representing his contributions into the Tier II system due to the Board's unlawful action and breaches of fiduciary duty.

57.     By law, these contributions are not taxable "under any circumstances."

58.     On a system-wide level, due to the Board's actions, the class of railroad retirees receiving Tier II benefits has been unlawfully taxed each year on amounts representing their after-tax payroll contributions into the Tier II system. As a result, for years, railroad retirees have not been receiving the correct benefit amounts.

59.     The Board's harm to Plaintiffs is an ongoing problem.

**G.    For over 20 years, a federal agency administering similar retirement programs has been reporting the taxable portion of retirement benefits to its retirees.**

60.    The Office of Personnel Management ("OPM") is a federal agency that administers retirement benefits for federal employees, retirees, and their families. It administers benefits under two retirement programs—the Civil Service Retirement System and the Federal Employees' Retirement System.

61.    Currently, there are more than 2,500,000 annuitants under OPM's management; by contrast, the Board manages less than 500,000 annuitants.

62.    Like retirees who receive Tier II benefits under the Railroad Retirement Act, some federal retirees who receive benefits through OPM are entitled to a tax-free recovery of their contributions into the retirement system.

63.    Before 1999, OPM did not report the taxable portion of retirement benefits on Form CSA 1099R (Statement of Annuity Paid). Instead, it reported only the gross annuity, leaving the retiree to calculate the annuity's taxable portion.

64.    In approximately 1999, the United States General Accounting Office ("GAO") worked with OPM to determine "(1) what reasons, if any, exist for the Office of Personnel Management (OPM) to report the taxable portion of annuity benefits for newly retired federal employees on the Form CSA 1099R (Statement of Annuity Paid) and (2) the feasibility of OPM's doing so." [6]

_____

[6] Ltr. from GAO to Hon. Amo Houghton, Chairman, Subcommittee on Oversight, Committee on Ways & Means, House of Representatives, "Determining the Taxable Portion of Federal Pension Distributions" (May 3, 1999) ("**Exhibit A**"), at 1.

65.    After its review, the GAO reported three reasons OPM should report

the taxable portion of annuities on Form CSA 1099R:

> *First*, the task of calculating this portion can be burdensome from the
> retirees' perspective. *Second*, the complexity of the requirement could
> result in retirees' miscalculating the taxable portion of their annuity for
> income tax purposes. *Finally*, reporting the taxable portion of the annuity
> on Form CSA 1099R would allow the Internal Revenue Service (IRS) to
> use it for computer matching purposes. Computer matching of
> information and tax returns is one way that IRS verifies a taxpayer's
> income to determine the proper tax owed.[7]

66.    OPM determined it could easily program a formula to calculate the

taxable amount for retirees using the Simplified Method calculation.[8]

67.    All OPM-administered annuities starting after November 18, 1996,

required retirees to use the Simplified Method calculation to determine the taxable

portion of their retirement benefits.

68.    Since tax year 2000—a quarter of a century ago—OPM has included a

"Taxable Annuity" box on Form CSA 1099R, and it has reported the taxable amount

each year to retirees who retired after November 18, 1996.

69.    Plaintiff Logan's tax preparer also prepares tax returns for clients who

retired from federal civil service and receive benefits through OPM. To prepare their

taxes, she references the taxable amount clearly written on Form CSA 1099R.

---

[7] *Id.* at 1 (emphasis added).
[8] The Simplified Method is a complex calculation described by the Internal Revenue Service in
its Publication 575 to determine the taxable portions of annuity payments. The Simplified
Method can be used to determine the taxable portion of a railroad retiree's Tier II benefits if
he or she began receiving benefits after November 18, 1996.

### FIRST CLAIM
### (Breach of Fiduciary Duty)

70.     Under the Railroad Retirement Act, the Board lacks legal authority to collect, withhold, or retain, or to cause the collection, withholding, or retention of amounts representing the nontaxable portion of Plaintiffs' Tier II benefits.

71.     The Board has undertaken to administer the Railroad Retirement Act.

72.     The Board owes Plaintiffs fiduciary duties, which it has expressly acknowledged.

73.     The Board's fiduciary duties include but are not limited to: ensuring Plaintiffs receive the correct benefit amounts; ensuring the accuracy and integrity of the railroad retirement program; and ensuring railroad retirement assets are protected, collected, recorded, and reported appropriately.

74.     The Board violated 45 U.S.C. § 231m(a), and breached its fiduciary duties to Plaintiffs, by directing retirees to report the entire amount listed in Box 7 of Form RRB-1099-R as income, thereby causing the collection, withholding, or retention of amounts representing the nontaxable portion of Plaintiffs' Tier II benefits.

75.     The Board further breached its fiduciary duties to Plaintiffs by failing to ensure they received their correct benefit amounts and by taking actions that subjected them to an unauthorized tax on their contributions into the Tier II system. By doing so, the Board caused the illegal collection, withholding, or retention of amounts representing the nontaxable portion of Plaintiffs' Tier II benefits.

76.    By unlawfully collecting, withholding, or retaining, or causing the collection, withholding, or retention of amounts representing the nontaxable portion of Plaintiffs' Tier II benefits, the Board—Plaintiffs' fiduciary—was unjustly enriched at Plaintiffs' expense.

## SECOND CLAIM
### (Unlawful Agency Action)

77.    Under the Railroad Retirement Act, the Board lacks legal authority to collect, withhold, or retain, or to cause the collection, withholding, or retention of amounts representing the nontaxable portion of Plaintiffs' Tier II benefits.

78.    The Board violated 45 U.S.C. § 231m(a) by directing retirees to report the entire amount listed in Box 7 of Form RRB-1099-R as income, thereby causing the collection, withholding, or retention of amounts representing the nontaxable portion of Plaintiffs' Tier II benefits.

79.    By unlawfully collecting, withholding, or retaining, or causing the collection, withholding, or retention of amounts representing the nontaxable portion of Plaintiffs' Tier II railroad retirement benefits, the Board was unjustly enriched at Plaintiffs' expense.

80.    By unlawfully collecting, withholding, or retaining, or causing the collection, withholding, or retention of amounts representing the nontaxable portion of Plaintiffs' Tier II railroad retirement benefits, the Board deprived Plaintiffs of significant property interests, violating Plaintiffs' rights under the Due Process Clause of the U.S. Constitution.

## THIRD CLAIM
### (Permanent Injunction)

81.    Plaintiffs seek a permanent injunction requiring the Board to report to each railroad retiree the exact taxable amount of his or her Tier II retirement benefits each tax year.

82.    Due to the Board's ongoing breaches of fiduciary duty and violations of 45 U.S.C. § 231m(a), railroad retirees, collectively, have been losing millions of dollars each year for at least the past seven years.

83.    Because the Board enjoys sovereign immunity from monetary damages, Plaintiffs have suffered irreparable harm.

84.    Because the Board enjoys sovereign immunity from monetary damages, Plaintiffs do not have an adequate remedy at law.

85.    Because monetary damages are not available, equitable relief is required.

86.    Without an injunction, Plaintiffs will continue to suffer ongoing harm by the Board's breaches of fiduciary duty and violations of 45 U.S.C. § 231m(a).

87.    The balance of hardships and the public's interests warrant an injunction.

88.    Calculating the taxable amount of Tier II retirement benefits would be burdensome and confusing for an ordinary railroad retiree. The required calculation is complex, making miscalculations likely. If a retiree miscalculates the taxable amount and prepares his or her tax returns using an incorrect number for the taxable amount, he or she will not receive the correct Tier II benefit amount and/or will be subjected

to an unauthorized tax on amounts representing after-tax payroll contributions to the Tier II system.

89.     On the other hand, requiring the Board to calculate and report to retirees the taxable amount of their Tier II benefits would not be unduly expensive or burdensome. For example, the Board can program a formula to calculate the taxable amount using the Simplified Method as the OPM began doing 25 years ago. That simple change would result in retirees consistently and reliably receiving the correct benefit amount, and it would prevent them from being subject to an unauthorized tax in violation of 45 U.S.C. § 231m(a).

## Class Action Allegations[9]

90.     Plaintiff Logan brings this action under Federal Rule of Civil Procedure 23 on behalf of himself and the following putative class:

> All former railroad employees who received Tier II retirement benefits under the Railroad Retirement Act prior to the date this suit was filed.

91.     While Plaintiff does not know the exact number and identities of the class members, he believes there are at least 100,000 railroad retirees in the class. The class is so numerous that joinder of all class members is not practical.

92.     The exact number of class members and their identities can be ascertained through discovery of the Board's records.

93.     Questions of law and fact common to all class members include, but are

---

[9] Pursuant to Local Rule 23.2, Plaintiffs anticipate filing a motion for certification within 90 days of filing this Complaint.

not limited to:

    (i)    Does the Board have legal authority, under the Railroad Retirement Act, the Internal Revenue Code, or any other statute, to collect, withhold, or retain amounts, or to cause the collection, withholding, or retention of amounts, representing the nontaxable portion of Plaintiffs' Tier II benefits?

    (ii)    Does the Board owe Plaintiffs a fiduciary duty to ensure they receive their correct benefit amounts and to avoid taking actions that subject them to an unauthorized tax on their contributions into the Tier II system?

    (iii)    Did the Board violate 45 U.S.C. § 231m(a) by directing Plaintiffs to report the entire amount listed in Box 7 of Form RRB-1099-R as income?

94.    Plaintiff Logan's claims are typical of the class's claims. Like the other class members, Plaintiff Logan is a railroad retiree who paid into the Tier II system with after-tax payroll dollars and who received Tier II benefits prior to the date he filed this suit.

95.    Plaintiff will fairly and adequately protect the class's interests because his interests do not conflict with the class's interests, and he has retained counsel experienced in litigating class actions and complex civil matters.

96.    Prosecution of separate actions by individual class members would

create a risk of inconsistent or varying adjudications that would impose incompatible standards of conduct on the Board.

97.    Prosecution of separate actions by individual class members would also create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

98.    The declaratory and injunctive relief sought will provide relief to the entire class because the Board has acted or refused to act on grounds that apply generally to the class.

99.    Common questions of law and fact predominate over questions affecting only individual members; a class action is superior to other available methods for fairly and efficiently adjudicating the class's claims.

100.    The burden and expense of individual litigation is prohibitive and prevents class members from individually seeking relief from the Board's unlawful acts, which have affected the entire class. On the other hand, management of this action as a class action will be relatively less difficult and provide class-wide relief.

## Requested Relief

Plaintiffs request the following relief from the Court:

a)    A judgment declaring that the Railroad Retirement Board lacks legal authority under the Railroad Retirement Act, the Internal Revenue Code, or any other

statute to collect, withhold, or retain, or to cause the collection, withholding, or retention of amounts representing the nontaxable portion of Plaintiffs' Tier II railroad retirement benefits.

b)    A judgment declaring that the Railroad Retirement Board violated 45 U.S.C. § 231m(a) by directing them to report the entire amount listed in Box 7 of Form RRB-1099-R as income.

c)    A judgment declaring that the Railroad Retirement Board breached its fiduciary duties to them by directing them to report the entire amount listed in Box 7 of Form RRB-1099-R as income.

d)    A judgment declaring that the Railroad Retirement Board breached its fiduciary duties to them by failing to ensure they received their correct benefit amounts and by knowingly taking actions that subjected them to an unauthorized tax on their contributions into the Tier II system.

e)    Restitution and return of all amounts the Railroad Retirement Board unlawfully collected, withheld, or retained, or caused to be unlawfully collected, withheld, or retained, that represent the nontaxable portions of Plaintiffs' Tier II benefits, plus interest.

f)    A permanent injunction prohibiting the Railroad Retirement Board from collecting, withholding, or retaining, or causing the collection, withholding, or retention of amounts representing the nontaxable portion of Plaintiffs' Tier II benefits.

g)    A permanent injunction requiring the Railroad Retirement Board to report to each retiree the exact taxable amount of his or her Tier II benefits each tax year.

h)    An award to Plaintiffs for their litigation costs, legal fees, and other penalties allowed by law, including reasonable compensation to the class representative for his time, effort, and risk.

i)    Such other relief as the Court deems equitable and just.

Respectfully submitted,

*/s/ Charles S. Siegel*
Charles S. Siegel
siegel@waterskraus.com
State Bar No. 18341875
Leslie C. MacLean
lmaclean@waterskraus.com
State Bar No. 00794209
Taryn E. Ourso
tourso@waterskraus.com
State Bar No. 24107315

**WATERS KRAUS PAUL & SIEGEL**
3141 Hood Street, Suite 700
Dallas, Texas 75219
Telephone:    (214) 357-6244
Fax:          (214) 357-7252

*and*

Brant C. Martin
State Bar No. 24002529
brant.martin@wickphillips.com
Colin P. Benton
State Bar No. 24095523

colin.benton@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone:    (817) 332-7788
Fax:            (817) 332-7789

*and*

Jeffrey D. Lerner
State Bar No. 12223910
jeff.lerner@thedovefirm.com

**THE DOVE FIRM**
524 E. Lamar Boulevard, Suite 230
Arlington, Texas 76011
Telephone:    (817) 462-0006
Fax:            (817) 462-0027

*and*

John R. (Scotty) MacLean, III
State Bar No. 00787942
smaclean@macleanfirm.com

**MACLEAN LAW FIRM**
4916 Camp Bowie Boulevard, Suite 100
Fort Worth, Texas 76107
Telephone:    (817) 529-1000
Fax:            (817) 698-9401

*Attorneys for Plaintiffs*