IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

| | |
|---|---|
| JAMES LOGAN, SR., on behalf of himself and all others similarly situated<br><br>      Plaintiffs,<br><br>v.<br><br>UNITED STATES RAILROAD RETIREMENT BOARD,<br><br>      Defendant. | Civil Action No. 4:25-cv-00238-O |

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

NANCY LARSON
ACTING UNITED STATES ATTORNEY

Tami C. Parker
Assistant United States Attorney
Burnett Plaza, Suite 1700
801 Cherry Street, Unit # 4
Fort Worth, TX 76102-6882
Texas Bar No. 24003946
Telephone:  817-252-5200
Facsimile:  817-252-5458
tami.parker@usdoj.gov

Attorneys for Defendant

**Table of Contents**

I.    Introduction ...................................................................................................... 1

II.   Facts .................................................................................................................. 2

    A.    The U.S. Railroad Retirement Board ..................................................... 2

    B.    Logan receipt and use of the RRB-1099-R-Form. .................................. 5

    C.    Logan files suit. ..................................................................................... 5

III.  Legal Standards ................................................................................................ 7

    A.    Standard of Review ................................................................................ 7

        1.    Rule 12(b)(1) ............................................................................. 7

        2.    Rule 12(b)(6) ............................................................................. 8

IV.   Arguments ........................................................................................................ 9

    A.    Logan fails to identify a waiver of sovereign immunity as required to establish jurisdiction. ........................................................................... 9

        1.    28 U.S.C. § 1331 does not waive the United States' sovereign immunity. ................................................................................. 10

        2.    The Court lacks jurisdiction under the Administrative Procedure Act. ............................................................................ 10

        3.    The Federal Tort Claims Act does not waive the United States' sovereign immunity for Logan's monetary claims. ............. 14

        4.    The Declaratory Judgment Act does not waive the United States' sovereign immunity. .................................................... 16

    B.    Logan fails to state a claim for relief. .................................................. 16

        1.    Logan fails to state a claim under the APA. ............................... 16

        2.    Logan fails to state a claim under the FTCA. ............................ 17

    C.    Logan cannot demonstrate that he is entitled to a preliminary injunction. ............................................................................................ 18

      D.    Logan fails to meet the elements necessary to certify a class. ................... 19

V.    Conclusion ........................................................................................................ 21

## Table of Authorities

Cases

*A.L. Rowan & Son, Gen. Contractors, Inc. v. Dep't of Hous. & Urban Dev.*,
611 F.2d 997, 1000 (5th Cir.1980) ........................................................................... 10

*Aamer v. Obama*,
742 F.3d 1023, 1038 (D.C. Cir. 2014) .................................................................... 18

*Alabama-Coushatta Tribe of Tex. v. United States*,
757 F.3d 484, 489 (5th Cir. 2014) ........................................................................... 12

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*,
878 F.2d 806, 809 (5th Cir. 1989) ........................................................................... 18

*Ashcroft v. Iqbal*,
129 S. Ct. 1937, 1949 (2009) ................................................................................ 8, 9

*Atorie Air, Inc. v. Fed. Aviation Admin*,
942 F.2d 954, 957 (5th Cir. 1991) ........................................................................... 15

*Balistrieri v. United States*,
303 F.2d 617, 619 (7th Cir. 1962) ........................................................................... 16

*Barber v. United States*,
642 F. App'x 411, 415 (5th Cir. 2016) .................................................................... 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 555, 570 (2007) ................................................................................ 8,9

*Berger v. Compaq Comput. Corp.*,
257 F.3d 475, 479, n.4 (5th Cir. 2001) .................................................................... 19

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496, 498-99 (5th Cir. 2000) ....................................................................... 9

*Davis v. United States*,
597 F.3d 646, 649 (5th Cir. 2009) ............................................................................. 8

*DeBremaecker v. Short*,
433 F.2d 733, 734 (5th Cir. 1970) (per curiam) ..................................................... 20

*Department of Energy v. Ohio*,
    503 U.S. 607, 615 (1992) ........................................................................ 8

*FDIC v. Meyer*,
    510 U.S. 471, 477 (1994) ...................................................................... 17

*George v. SI Grp., Inc.*,
    36 F.4th 611, 619 (5th Cir. 2022) ......................................................... 9

*Heckler v Chaney*,
    470 U.S. 821, 829 (1985) ...................................................................... 10

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*,
    143 F.3d 1006, 1010 (5th Cir. 1998) ..................................................... 7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375, 377 (1994) ................................................................... 7,8

*Li v. Jaddou*,
    No. 22-50756, 2023 WL 3431237, at *1 (5th Cir. May 12, 2023) ........... 17

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383, 387 (5th Cir. 2010) ......................................................... 9

*Martinez v. Reno*,
    No. 3:97-CV-0813-P, 1997 WL 786250, at *2 (N.D. Tex. Dec. 15, 1997) ............... 11

*Mazurek v. Armstrong*,
    520 U.S. 968, 972 (1997) ...................................................................... 18

*McAfee v. 5th Circuit Judges*,
    884 F.2d 221, 222-23 (5th Cir. 1989) ................................................... 15

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
    760 F.2d 618, 621 (5th Cir. 1985) ......................................................... 18

*Nishimatsu Const. Co. v. Houston Nat'l Bank*,
    515 F.2d 1200, 1206 (5th Cir. 1975) ..................................................... 11

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55, 64 (2004) .......................................................................... 14

*Ramming v. United States*,
    281 F.3d 158, 161 (5th Cir. 2001) ............................................................ 11

*Sheppard v. Texas Dept. of Transportation*,
    158 F.R.D. 592, 595 (E.D. Tex. 1994) ...................................................... 11

*Steel Co. v. Citizens for a Better Env't.*,
    523 U.S. 83, 94 (1998) .............................................................................. 7

*Voluntary Purchasing Groups v. Reilly*,
    889 F.2d 1380, 1385 (5th Cir. 1989) ....................................................... 8,10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 350, (2011) ....................................................................... 19,20

*Walton v. Fed. Bureau of Prisons*,
    533 F. Supp. 2d 107, 114 (D.D.C. 2008) ................................................. 16

*Webster v. Doe*,
    486 U.S. 592, 597 (1988) .......................................................................... 10

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7, 24 (2008) ................................................................................ 18

Statutes, Rules, and Other Authorities

20 C.F.R. § 216.31 ........................................................................................ 2
5 U.S.C. § 551(13) ........................................................................................ 12
5 U.S.C. § 701(a) .......................................................................................... 14
5 U.S.C. § 701(a)(2) ..................................................................................... 10
5 U.S.C. § 701(b)(2) ..................................................................................... 12
5 U.S.C. § 702 .............................................................................................. 1,9,12
5 U.S.C. § 704 .............................................................................................. 12
5 U.S.C. § 706 .............................................................................................. 1,9,14
18 U.S.C. § 1331 ........................................................................................... 9
26 U.S.C. § 86(d)(4) ..................................................................................... 2
26 U.S.C. § 6050G ........................................................................................ 2,12,17

26 U.S.C. § 6050G(a)(1-4) ................................................................ 3

26 U.S.C. § 7433 ............................................................................ 13

26 U.S.C. § 7422(a) ........................................................................ 13

28 U.S.C. § 1331 ............................................................................ 10

28 U.S.C. § 1346 ............................................................................ 9,17

28 U.S.C. § 1346(b)(1) .................................................................... 15

28 U.S.C. § 2675(a) ........................................................................ 15

28 U.S.C. § 2680(c) ........................................................................ 15

45 U.S.C. § 231b(a)(1) .................................................................... 2

45 U.S.C. § 231b(b)(1) .................................................................... 2

45 U.S.C. § 231m(a) ................................................................ 1,6,11,14

Tax Reform Act of 1986, Pub. L. 99–514 ........................................ 11

Fed. R. Civ. P. 12(b)(1) .................................................................. 3,7,11

Fed. R. Civ. P. 12(b)(6) .................................................................. 4,8,11

Fed. R. Civ. P. 23 .......................................................................... 19

Fed. R. Civ. P. 23(a) ...................................................................... 19,20

Fed. R. Civ. P. 23(b)(1) .................................................................. 19

Fed. R. Civ. P. 23(b)(2) .................................................................. 19

Fed. R. Civ. P. 23(b)(3) .................................................................. 19

# I.    Introduction

Plaintiff James Logan, Sr. is a railroad retiree who receives retirement benefits through the Railroad Retirement Board (RRB).[1]  He complains that the IRS-approved Form RRB-1099-R provided to railroad retirees each year by the RRB fails to segregate taxable benefits from nontaxable benefits, resulting in retirees paying more taxes than legally required.  Logan alleges that the RRB's failure to segregate taxable benefits from nontaxable benefits, coupled with language on the Form RRB-1099-R that allegedly directs beneficiaries to report an amount that combines taxable with nontaxable benefits, violates the Administrative Procedure Act (APA), 5 U.S.C.§§ 702, 706, and the Board's fiduciary duties as set forth in 45 U.S.C. § 231m(a).  Logan seeks "declaratory and injunctive relief, preliminary injunctions, and "restitution" from the RRB for the amounts the government [allegedly] unlawfully took from them."  (Doc. No. 1 at 2 (hereinafter Compl.").). He also seeks to certify a class of similarly situated RRB annuitants.

As set forth below, Logan both fails to demonstrate an applicable waiver of sovereign immunity and fails to state a claim for relief.  His claims for declaratory relief under the Administrative Procedure Act, 5 U.S.C. §§ 702, 706, fail because he cannot demonstrate that the RRB took any final agency action that caused him a legal wrong, or that the RRB failed to act in a manner required by law.  His claims for "restitution" from the RRB for taxes he overpaid to the IRS fail because he cannot demonstrate a waiver of sovereign immunity for monetary damages in this case.  And his claims for a preliminary

---

[1] Throughout this report, the initialism "RRB" refers to the agency as a whole, and "Board" refers to the three-member Board that heads the agency.

injunction fail on the merits because given the absence of any statute, regulation, policy, rule or any other legal provision, he cannot demonstrate a substantial likelihood of success on the merits.  Last, Logan fails to meet the necessary elements for certifying a class.

## II.    Facts

### A.    The U.S. Railroad Retirement Board

The U.S. Railroad Retirement Board (RRB) is an independent agency in the executive branch of the United States government charged with administering the Railroad Retirement Act of 1974 (RRA) and the Railroad Unemployment Insurance Act (RUIA) (collectively, the Acts). 45 U.S.C. §§ 231 et seq., 351 et seq.  The RRA provides age and service-based annuities for employees who have been credited with at least ten years of railroad service.  *See* 20 C.F.R. 216.31.  These annuities generally have two components: Tier I benefits and Tier II benefits.  Tier I benefits are equivalent to Social Security.  *See* 45 U.S.C. 231b(a)(1); 26 U.S.C. § 86(d)(4).  If Tier I benefits exceed the amount which would be payable if the employee had been covered under Social Security that portion is called the non-social security equivalent benefit (NSSEB).  Tier II benefits are based solely on an employee's rail industry service and earnings and are comparable to retirement benefits like 401ks and pension plan contributions paid over and above social security benefits to workers in other industries.  *See* 45 U.S.C. 231b(b)(1).  Annuities "are not subject to any tax or garnishment" except as provided in the RRA and the Internal Revenue Code (IRC).  *See* 45 U.S.C. § 231m.

The Board is required by law to report benefits to the IRS.  Specifically, 26 U.S.C.

§ 6050G provides that the RRB must file an annual return with the IRS showing (1) the aggregate amount of RRA benefits, other than Tier 1 railroad retirement benefits, paid to any individual during the calendar year, (2) the employee's contributions which are treated as having been paid for purposes of IRC section 72(r), (i.e., the Tier II benefits which are treated as employee contributions to a qualified pension plan), (3) the name and address of the individual, and (4) such other information as IRS may require.  26 U.C.S. § 6050G(a)(1-4).  The RRB must also furnish, by January 31 of the year after the return is made, a written statement that shows (1) the aggregate amount of payments made to the individual, (2) the amounts attributable to employee contributions, and (3) any other information required by IRS. 26 U.C.S. § 6050G(b)(1-2).  The RRB utilizes the RRB-1099-R Form to provide this information to its annuitants.  This form is approved by the IRS.

A portion of Tier II benefits is tax-free, but 26 U.S.C. § 6050G does not mandate that that portion be specifically calculated on behalf of annuitants and the RRB has not undertaken the burden and expense of performing the necessary calculations for each of its hundreds of thousands of annuitants.  Instead, the RRB provides the aggregate amount of benefits received during the reporting period as well as the retiree's total contributions, and then on the back of the same form, provides guidance for understanding the numbers and how they are reported.  (App'x at 002.) [2]  In that guidance, annuitants are specifically

---

[2] Although Plaintiff provides images of the front of the RRB-1099-R Form, he does not provide images from the back of the document.  A copy of the back of the Form is provided for this Court at App'x 002.  As explained below, this Court can consider the evidence under Fed. R. Civ. P. 12(b)(1) because it is relevant to determining this Court's jurisdiction.  The Court can also consider this evidence as part of its

told that the benefits reported on the form "may be partially or fully taxable," and that

they must determine their taxable RRB income. (*Id.*). For example, the RRB-1099-R

Form states that Box 7 "Total Gross Paid" is the sum of Boxes 4, 5, and 6. (App'x at 001.)

Guidance is then offered to understand the information in those boxes. For example,

when describing Box 4, the "Explanation of Items on the back of Form RRB-1099-R"

states:

> The contributory amount paid (NSSEB and/or Tier 2
> payments) may be partially or fully taxable depending on the
> presence and use of the employee contribution amount. The
> amount in Box 4 is the total contributory pension paid for
> 2024 and may be used under the General Rule provisions to
> compute a nontaxable portion of NSSEB and Tier 2
> payments. For more information on the tax treatment of the
> contributory amount paid, see **IRS Publication 575, Pension
> and Annuity Income** and/or I**RS Publication 939, General
> Rule for Pensions and Annuities**.

(emphasis in original). For Box 3, the "Explanation of Items on the back of Form RRB-

1099-R states:

> **If this box is blank, it means that your contributory
> amount paid and total gross paid are fully taxable. Refer
> to IRS Publication 575, Pension and Annuity Income and
> IRS Publication 939, General Rule for Pensions and
> Annuities**. For more information on the tax treatment and
> how to use the employee contribution amount, expected
> return, and the IRS actuarial tables **contact the IRS or your
> tax preparer for assistance**.

(emphasis in original). [3] Thus, annuitants are informed that some portion of the numbers

---

analysis under Fed. R. Civ. P. 12(b)(6) because the RRB-1099-R Form is referenced in the complaint, images of the form are embedded in the complaint, and the form is central to Plaintiff's claims.

[3] The IRS publication explains that non-taxable portion "is figured when [the] annuity starts and remains the same each year." IRS Publication 575 at 12. It further explains that the non- taxable portion of Tier II

set forth on the form may not be subject to taxes, and are directed to resources to assist them.

## B.    Logan receipt and use of the RRB-1099-R-Form.

Logan asserts that he retired in 2018 after 47 years of railroad service.  (Compl. at ¶ 46.)  According to Logan, he uses an experienced tax preparer to prepare his taxes each year, and until 2024, the tax preparer reported the entire amount in Box 7 of the Form RRB-1099-R as taxable income because language printed on the IRS-approved form states that the amounts reflected on the form should be reported to the IRS.  (Compl. at ¶¶ 47-52.)  Logan alleges that the form does not indicate that only a portion of the income listed is taxable and he and his tax preparer were unaware that additional steps were necessary to determine whether a portion of his benefits was nontaxable.  (Compl. at ¶ 50.)  In support of these claims, Logan provides multiple images of the front of these forms, but no images of the back.  (*See generally*, Compl. at ¶¶ 33, 40, 51.)

## C.    Logan files suit.

On March 11, 2025, Logan filed a complaint in this Court.  (*See* Doc. 1.)  The complaint sets forth two causes of action: (1) breach of fiduciary duty and (2) unlawful agency action.  Logan essentially complains that the RRB-1099-R form is confusing and has caused him, and he presumes others, to pay more in taxes than they were required to under the law.  (*See generally* Compl. at ¶¶ 53-59.)  Citing the RRB's fiduciary duty to

---

benefits can be calculated using the employee contribution amount in Box 3 of the RRB-1099-R Form: "This amount is the employee's cost that you use to figure the tax-free part of the NSSEB and tier 2 benefit you received." IRS Publication 575 at 8.

ensure trust funds assets are protected, collected, recorded, and reported appropriately, and to ensure "the correct benefits amounts are being paid to the right people, (Compl. at ¶¶ 14-17.), Logan claims that the RRB had a duty to perform the necessary calculations on behalf of its beneficiaries.  Moreover, because some portion of taxes collected on the taxable portion of RRB benefits is transferred by the IRS back into the Railroad Retirement Account for the benefit of the beneficiaries, Logan repeatedly alleges that the *RRB* has improperly collected, withheld, or retained taxes assessed on the non-taxable portion of Tier II benefits because he, and he presumes others, paid taxes on nontaxable benefits. (Compl. at ¶¶ 70, 74-80, 93.) Logan also relies heavily upon 45 U.S.C. 231m(a), the anti-garnishment provision of the RRA, which exempts RRA annuities from being assigned or subject to any tax other than income tax on any supplemental annuity as defined in the Internal Revenue Code. Logan essentially argues that because the RRB did not perform the calculations for its annuitants and some overpaid taxes, the RRB is improperly taxing nontaxable benefits in violation of that statute.  (Compl. at ¶¶ 70-76.)

Logan makes a number of demands as relief in this action.  First, he demands declaratory judgments that the RRB:

- Lacks legal authority to collect, withhold, or retain or to cause the collection, withholding, or retention of the non-taxable portion of Tier II benefits.  (Compl. at 21-22.)

- Violated section 14 of the RRA by directing railroad retirees to report the entire amount of Tier II benefits to the IRS. (Compl. at 22.)

- Violated its fiduciary duties to railroad retirees by directing them to report the entire amount of Tier II benefits to the IRS.  (*Id.*)

- Violated its fiduciary duties to railroad retirees by failing to ensure they

received their correct benefit amounts and by knowingly taking actions that subjected them to an unauthorized tax. (*Id*.)

Logan then demands as "restitution" all the amounts that the RRB unlawfully collected, withheld, or retained or caused to be collected, withheld, or retained due to the taxation of non-taxable portions of Tier II benefits, plus interest. (*Id*.) In addition to the above, Logan seeks permanent injunctions (1) prohibiting the RRB from collecting, withholding, or retaining, or causing the collection, withholding, or retention of the amount taxed on non-taxable portions of Tier II benefits, and (2) requiring the RRB to report the taxable amount of each railroad retiree's Tier II benefits each tax year. (*Id*.) Lastly, Logan seeks to certify a class of all railroad retirement beneficiaries, and to obtain costs and fees, including compensation for the class attorney. (*Id*.)

### III.     Legal Standards

#### A.     Standard of Review

##### 1.     Rule 12(b)(1)

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *accord Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause."). A court should presume that a cause of action lies outside of its limited jurisdiction, "and

the burden of establishing the contrary rests upon the party asserting jurisdiction."
*Kokkonen*, 511 U.S. at 377 (citation omitted); *Davis v. United States*, 597 F.3d 646, 649
(5th Cir. 2009).

In a suit against the United States, establishing subject-matter jurisdiction requires
a waiver of the United States' sovereign immunity, which must be stated in
"unequivocal" terms in a pertinent statute. *Department of Energy v. Ohio*, 503 U.S. 607,
615 (1992). "Waivers of immunity must be construed strictly in favor of the sovereign"
and "not enlarged beyond what the language requires." *Id.* (internal quotations and
citations omitted); *see also Voluntary Purchasing Groups v. Reilly*, 889 F.2d 1380, 1385
(5th Cir. 1989).

### 2.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a
complaint must contain sufficient factual matter, accepted as true, to 'state a claim for
relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949
(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The alleged
facts must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555
As the Supreme Court stated in *Iqbal*:

> A claim has facial plausibility when the plaintiff pleads
> factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct
> alleged. The plausibility standard is not akin to a probability
> requirement, but it asks for more than a sheer possibility that
> a defendant has acted unlawfully. Where a complaint pleads
> facts that are merely consistent with a defendant's liability, it
> stops short of the line between possibility and plausibility of
> entitlement to relief.

*Iqbal,* 556 U.S. at 678 (cleaned up).

The Court must accept the factual allegations of the complaint as true for purposes of deciding the motion, but "'[is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft*, 129 S. Ct. at 1949-50 (quoting *Twombly*, 550 U.S. at 555). Moreover, the Court may consider not only the allegations in the Complaint, but also any documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice. *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (citation omitted) (recognizing that the court does not convert a Rule 12 motion into a Rule 56 motion by considering evidence attached to the motion, referred to in the complaint, and central to the plaintiff's claim). In addition, the Court may consider any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000)).

## IV.    Arguments

### A.    Logan fails to identify a waiver of sovereign immunity as required to establish jurisdiction.

Logan argues that this Court has jurisdiction over his claims pursuant to 18 U.S.C. § 1331, 5 U.S.C. § 702, 5 U.S.C. § 706, and 28 U.S.C. § 1346. (Compl. at ¶ 3.) He also seeks relief pursuant to the Declaratory Judgment Act, 28 U.S.C. 2201 *et seq*. As explained below, however, none of these statutes waives the United States' sovereign immunity in this action.

1.    **28 U.S.C. § 1331 does not waive the United States' sovereign immunity.**

Section 1331 is the "federal question" jurisdiction statute, giving district courts "original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "It is well settled that section 1331 'implies no general waiver of sovereign immunity.'" *Reilly*, 889 F.2d at 1385 (quoting *A.L. Rowan & Son, Gen. Contractors, Inc. v. Dep't of Hous. & Urban Dev.*, 611 F.2d 997, 1000 (5th Cir.1980)). Therefore, it cannot be relied upon by itself as the basis for jurisdiction over a claim against the United States. *Id*. at 1385.

2.    **The Court lacks jurisdiction under the Administrative Procedure Act.**

Logan also fails to establish the Court's jurisdiction under the APA. For the APA to act as a waiver of the United States' sovereign immunity, Logan must first meet the threshold requirement of Section 701. *Heckler v Chaney*, 470 U.S. 821, 829 (1985) ("[B]efore any review at all may be had [under the APA], a party must first clear the hurdle of § 701(a)."). That is because the APA—and its waiver of sovereign immunity—does not apply if the challenged agency action is "committed to agency discretion." 5 U.S.C. § 701(a)(2) ("This chapter applies, according to the provisions thereof, except to the extent that ... agency action is committed to agency discretion by law."); *Webster v. Doe*, 486 U.S. 592, 597 (1988) ("[J]udicial review under § 702...is predicated on satisfying the requirements of § 701...."). Logan fails to meet that threshold.

The only statute, regulation, policy, rule or authority cited by Logan to support his claim that the RRB is required to make the calculations demanded in his complaint is 45

U.S.C. § 231m.  (*See generally* Compl.)  But section 231m(a) merely states that the RRA

annuities are not subject to a tax other than that portion allowed under the IRC.  Logan

has set forth no facts suggesting that the RRB is "taxing" any benefit that it should not.

45 U.S.C. § 231m(a).  Rather, the facts of his complaint reflect that Logan has been

paying more taxes than he is required to pay because *he* did not read the provided

explanation for how to calculate his taxes and follow that guidance.[4]  That the IRS code

provides for a portion of the collected taxes to be returned to the trust fund for railroad

retirees does not convert the RRB into a taxing authority.

More important, 45 U.S.C. 231m sets forth no mandates for how the RRB must

perform calculations of taxable benefits for all of its annuitants.  *See generally* 45 U.S.C.

§ 231m(a).  And Defendant avers that there is no statute, regulation, policy or rule that

dictates that the RRB must perform the calculations demanded by Logan.  There was

such a rule decades ago, but the Tax Reform Act of 1986 (Tax Reform Act), Pub. L. 99–

---

[4] Logan claims that "Form RRB-1099-R does not indicate that only a portion of the income listed on the Form is taxable." (Compl. at 12.)  For purposes of a determining this Court's jurisdiction, the Court need not accept this statement as true.  That is because in evaluating a Rule 12(b)(1) motion, a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Ordinarily, the Court would have to accept this fact as true for purposes of dismissal under 12(b)(6), but that is not the case here.  "Where the allegations in the complaint are contradicted by facts established by documents attached as exhibits to the complaint, the court may properly disregard the allegation."  *Martinez v. Reno*, No. 3:97-CV-0813-P, 1997 WL 786250, at *2 (N.D. Tex. Dec. 15, 1997), *citing Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  Here, Plaintiff embeds the RRB-1099-R in his complaint, but only the front of the form. Defendant has attached the entire form to this motion to dismiss.  The form can be considered part of the pleadings as it is central to Plaintiff's claims. *See Sheppard v. Texas Dept. of Transportation*, 158 F.R.D. 592, 595 (E.D. Tex. 1994) ("[W]hen a plaintiff does not attach a pertinent document to the complaint, a 'defendant may introduce the exhibit as part of his motion attacking the pleading.") (cleaned up). The back of the RRB-1099-R flatly contradicts Logan's assertion that the Form does not explain that a portion of his benefits might not be taxable.  (App'x 002.)  The RRB also maintains a webpage explaining the form:  https://rrb.gov/Benefits/IncomeTax/TXL1099R.

514, removed the requirement for the RRB to calculate and track the tax-exempt amount of the Tier II portion of a railroad retiree's annuity. Now, the only statute that does dictate what the RRB should report to its beneficiaries is 26 U.S.C. § 6050G. That statute does not include a requirement that the RRB perform these calculations for all of its annuitants. *See* 26 U.S.C. § 6050G. Given that this statute does not require the RRB to perform the calculations that Logan seeks, it is left to the discretion of the RRB to determine whether to undertake the burden and expense of performing calculations on taxable versus nontaxable portions of RRA benefits. Logan cannot rely on the APA as a waiver of sovereign immunity.

Additionally, setting aside Logan's inability to meet even the foundational requirement of a waiver of sovereign immunity under the APA, Logan cannot demonstrate a waiver of sovereign immunity under the other provisions of the APA. First, he fails to set forth fact establishing a waiver of sovereign immunity under 5 U.S.C. § 702. As the Fifth Circuit has explained, there are "two separate requirements for establishing a waiver of sovereign immunity for claims brought pursuant to the general provisions of the section 702 of the APA. *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 489 (5th Cir. 2014); *see also* 5 U.S.C. §§ 702, 704. Plaintiffs must: (1) identify some final agency action affecting them in a "specific way," and (2) show that they "suffered legal wrong because of the challenged agency action." *Id.* Logan's complaint does neither.

First, Logan fails to demonstrate that there is an actionable "agency action" that affects him in some way. 5 U.S.C. §§ 551(13), 701(b)(2). Indeed, as previously

explained, Logan fails to identify any statutory or regulatory *obligation* for the RRB to perform the calculations he demands, and according to Logan, they have been providing information to annuitants in the same manner for years.  (Compl. at ¶ 58.)  In short, there has been no agency action that has affected Logan.  Logan has simply learned that his overpaid taxes and learned that a different federal agency voluntarily undertook responsibilities that the RRB has not.[5]  That does not constitute a final agency action for purposes of the APA.  And even if it was a final agency action, which it is not, Logan cannot demonstrate that he suffered some legal wrong *because* of the challenged action. He simply cannot demonstrate that the RRB failed to provide him with the necessary information to make the calculations himself or failed to provide him with adequate guidance to do so.  To the extent he suffered any "wrong," it is due to Logan and his tax preparer failing to read and understand the IRS forms.[6]

---

[5] According to the Complaint, the Office of Personnel Management (OPM) changed from reporting an aggregated amount of benefits to performing the calculations for taxable versus non-taxable portions in 2000.  Because OPM, a much larger agency changed its reporting methods, Logan contends that the RRB, a much smaller agency, should do the same.  (Compl. at ¶¶ 60-68.)  But tellingly, Logan does not suggest that the OPM was legally mandated to make the change to performing those calculations on behalf of its annuitants.  (*See generally*, *id.*)  Instead, Logan explains that a study was undertaken to determine whether there was reason to report only the taxable portion of the annuity benefits for newly retired federal employees, and if so, could it be done.  (Compl. at ¶¶ 64-66.)   OPM allegedly determined that it could be done, and that it would be helpful for its annuitants and the IRS.  (Compl. at ¶¶ 65-66.)

[6] Congress has created a civil action for a refund of improperly collected taxes.  *See* 26 U.S.C. § 7433.  However, a plaintiff must fulfill certain procedural requirements before suit, such as timely filing of an administrative claim for a refund with the Internal Revenue Service.  *See* 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.").  Logan has not alleged that he has made a claim for refund or credit with the Secretary of the IRS.

Section 706 of the APA also fails to serve as a waiver of sovereign immunity in this case. Section 706(1) authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 28 U.S.C. § 706(1). However, because courts may not review an agency action if a statute precludes judicial review or if the action is committed to agency discretion by law, 5 U.S.C. § 701(a), "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). As explained above, Logan cannot demonstrate that the RRB was *required* to segregate taxable benefits from nontaxable benefits in the manner he seeks through this action.

### 3. The Federal Tort Claims Act does not waive the United States' sovereign immunity for Logan's monetary claims.

In addition to asserting claims under the APA, Logan alleges a breach of fiduciary duty and unjust enrichment, which is classically sound under tort. (Compl. at ¶¶ 56, 70-76.) Relying on the Federal Tort Claims Act (FTCA), he seeks monetary damages in an amount equal to the taxes he overpaid. He cites, and presumably relies upon, the FTCA to provide the jurisdictional support for this claim.[7] But the FTCA does not provide a legal basis for his claims.

The FTCA does waive the United States's sovereign immunity, in part, for claims regarding "injury or loss of property, or personal injury or death caused by the negligent

---

[7] It does not appear that Logan is attempting to rely upon 45 U.S.C. § 231m(a) to support his claim to monetary damages. To the extent he is, Logan fails to demonstrate that 45 U.S.C. § 231m(a) waives sovereign immunity for monetary damages against the United States.

or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Yet, a district court lacks jurisdiction to consider claims pursuant to the FTCA "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). Doing so is a jurisdictional requisite for filing suit under the FTCA. *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989); *Barber v. United States*, 642 F. App'x 411, 415 (5th Cir. 2016). As set forth in the declaration of Stephanie Hillyard, Secretary to the Board for the RRB, Logan has not presented any of his claims to the RRB. (App'x at 003.) Furthermore, FTCA claims are properly brought only against the United States, who is not a party to this action. *Atorie Air, Inc. v. Fed. Aviation Admin.*, 942 F.2d 954, 957 (5th Cir. 1991). In light of that, sovereign immunity bars Logan's claims for money damages.

Moreover, to the extent Logan alleges that the RRB has improperly collected, withheld, or retained *taxes* assessed on the non-taxable portion of Tier II benefits, Section 1346 does not provide a waiver of sovereign immunity for this claim. *See* 28 U.S.C. § 2680(c). Logan paid his taxes to the IRS. As explained above, if Logan believes he overpaid his taxes, the remedy is to file the appropriate action with the IRS. Logan provides no authority for a waiver of sovereign immunity for him to use the FTCA to seek reimbursement of taxes *he* overpaid to the IRS by obtaining damages against the RRB.

4.      **The Declaratory Judgment Act does not waive the United States'
        sovereign immunity.**

Last, Logan cites the Declaratory Judgment Act as a basis for relief in this matter.

(Compl. at ¶ 5.)  It is well settled, however, that although the Declaratory Judgment Act

"created a remedy as to controversies of which the federal courts have jurisdiction," it

does not provide the United States' consent to suit.  *Balistrieri v. United States*, 303 F.2d

617, 619 (7th Cir. 1962); *accord Walton v. Fed. Bureau of Prisons*, 533 F. Supp. 2d 107,

114 (D.D.C. 2008).  Thus, because Logan cannot demonstrate a waiver of sovereign

immunity for his claims, he cannot establish jurisdiction in this Court and is not entitled

to any declaratory judgments in this action.

**B.      Logan fails to state a claim for relief.**

1.      **Logan fails to state a claim under the APA.**

Should the Court conclude that the APA may provide a waiver of sovereign

immunity in this case, Logan's complaint should be dismissed for failure to state a claim.

His claims fail under 5 U.S.C. 702 because he has not set forth sufficient facts giving rise

to a plausible claim that he was legally wronged when the RRB provided information that

part of his benefits might not be taxable but did not perform the calculations for him.

Similarly, in light of the information contained in the instructions for the form, Logan

fails to set forth sufficient facts giving rise to a plausible claim that RRB directed him,

and other similarly situated annuitants, to inaccurately report their taxable income.

Finally, Logan fails to set forth any facts giving rise to a plausible claim that the RRB

failed to ensure they received their correct benefit amounts.

Logan also fails to state a claim under 5 U.S.C. § 706 because under § 706(1), "a claim can proceed only where a plaintiff asserts that an agency (1) failed to take a discrete action that (2) it is required to take." *Li v. Jaddou*, No. 22-50756, 2023 WL 3431237, at *1 (5th Cir. May 12, 2023) (unpublished) (cleaned up). As explained above, Logan cannot demonstrate that the RRB was required to perform the calculations at issue in this litigation.

### 2.    Logan fails to state a claim under the FTCA.

In support of a claim that the RRB breached its fiduciary duty to Logan, Logan argues, essentially, that the RRB could have, and should have, made it easier for its annuitants to report their taxable benefits to the IRS.  (Compl. at ¶¶ 54-55, 73-75.)  But a claim is actionable under the FTCA only if it alleges the six elements of § 1346(b), which are that the claim be:

> (1) against the United States, (2) for money damages, (3) for injury or loss of property, or personal injury or death (4) caused by the negligent or wrongful act or omission of any employee of the Government (5) while acting within the scope of his office or employment, (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.* (quoting *FDIC v. Meyer*, 510 U.S. 471, 477 (1994)).  Here, Logan cannot contest that 26 U.S.C. § 6050G does not require the RRB to segregate his benefits in the manner he desires.  As such, Logan's allegations fail to state a plausible claim that any "harm" he may have experienced based on how the RRB provided information to him on the RRB-1099-R Form was caused by the "negligent or wrongful act or omission of any employee

of the Government."  Logan's FTCA claim fails.

**C.      Logan cannot demonstrate that he is entitled to a preliminary injunction.**

"A preliminary injunction is an extraordinary remedy never awarded as of right."

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Miss. Power &*

*Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). To justify

this "drastic remedy," a plaintiff must make a "*clear showing*" that (1) he has a

substantial likelihood of success on the merits; (2) will suffer irreparable harm without

the requested injunction; (3) the balance of equities tips in their favor; and (4)

preliminary relief serves the public interest.  *Mazurek v. Armstrong*, 520 U.S.  968,  972

(1997).    The "most important factor" is whether the movant has "established a

likelihood of success on the merits."  *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir.

2014).  That said, failure on any one of these elements requires that the motion be

denied.  *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

Here, Logan seeks permanent injunctions (1) prohibiting the RRB from collecting,

withholding, or retaining, or causing the collection, withholding, or retention of the

amount taxed on non-taxable portions of Tier II benefits, and (2) requiring the RRB to

report the taxable amount of each railroad retiree's Tier II benefits each tax year. (Compl.

at ¶¶ 81-89.)    He cannot, however, demonstrate that he has a substantial likelihood of

success on the merits for either claim.  Specifically, Logan cannot demonstrate that he is

likely to prevail on the merits of a claim seeking to prohibit the RRB from collecting,

withholding, or retaining, or causing the collection, withholding, or retention of the

amount taxed on non-taxable portions of Tier II benefits.  That is because Logan alleges

no facts suggesting that the RRB collects, withholds, or retains these benefits. Rather, it provides the information to beneficiaries who then report the information to the IRS. The IRS assesses the taxes based on the information provided and collects the appropriate taxes. Moreover, in the absence of any statute, regulation, rule, or other mandatory directive, Logan is not entitled to an order directing the RRB to perform the necessary calculations and then report only the taxable amount of each retiree's Tier II benefits.

**D.    Logan fails to meet the elements necessary to certify a class.**

Last, Logan seeks to certify a class of "[a]ll former railroad employees who received Tier II retirement benefits under the Railroad Retirement Act prior to the date this suit was filed." (Compl. at ¶¶ 90-100.) But Logan cannot meet the requirements of Fed. R. Civ. P. 23(a). To obtain certification of a proposed class, Logan must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of either Rule 23(b)(1), (b)(2), or (b)(3). Fed. R. Civ. P. 23. The burden is on Logan to demonstrate that he meets the requirements of Rule 23. *See Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479, n.4 (5th Cir. 2001); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.")

Rule 23(a) requires plaintiffs to demonstrate that (1) the class is so numerous that joinder is impracticable; (2) common questions of law or fact exist among the class members; (3) the class representatives' claims or defenses are typical of the claims or

defenses of the class; and (4) the class representatives will fairly and adequately represent the interests of the class members. FED. R. CIV. P. 23(a); *see also Dukes,* 564 U.S. at 345. Additionally, the Fifth Circuit has recognized that the ascertainability requirement is an implied prerequisite of Rule 23. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam). "[T]o maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Id*.

Here, Logan's attempt to certify a class fails both the second and third elements of Rule 23(a). First, Logan cannot demonstrate commonality. As set forth above, the Explanation of Benefits for the RRB-1099-R clearly informs annuitants like Logan that all of the benefits reported on the form may not be taxable, and provides references to assist them. (App'x 002.) Lead Plaintiffs must demonstrate not only that the class representatives and the proposed class suffered a violation of the same provision of law, but that they all allegedly suffered the same injury as a result. *Id.* at 349–50. Setting aside the fact that Logan has failed to demonstrate a violation of the law, Logan asserts no facts suggesting that other annuitants, or their tax preparers, failed to read the explanations on the back and make the appropriate adjustments to the income they reported. He fails to demonstrate that annuitants who utilized professional tax professionals are similarly situated to those individuals who did not, as that distinction raises breach of fiduciary duties. And Logan fails to state sufficient facts to demonstrate that his claims are typical of the proposed class, as he seeks to include all former railroad employees who received Tier II retirement benefits prior to the date of suit, when the tax treatment of his Tier II benefits is only similar to the retirees' whose annuities began after

November 18, 1996.  Those reasons alone are sufficient reasons to deny class

certification in this case.

## V.    Conclusion

For the foregoing reasons, the Court should dismiss Plaintiff's claims against

Defendant and grant Defendant all other relief to which Defendant is entitled.

Respectfully submitted,

NANCY LARSON
ACTING UNITED STATES
ATTORNEY

/s/ Tami C. Parker
Tami C. Parker
Assistant United States Attorney
Burnett Plaza, Suite 1700
801 Cherry Street, Unit # 4
Fort Worth, TX 76102-6882
Texas Bar No. 24003946
Telephone:  817-252-5200
Facsimile:   817-252-5458
tami.parker@usdoj.gov

Attorneys for Defendant

Certificate of Service

On May 30, 2025, I electronically submitted the foregoing document with the
clerk of court for the U.S. District Court, Northern District of Texas, using the electronic
case filing system of the court.  I hereby certify that I have served all parties
electronically or by another manner authorized by Federal Rule of Civil Procedure
5(b)(2).

/s/ Tami C. Parker
Tami C. Parker
Assistant United States Attorney