IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

JAMES LOGAN, SR., on behalf of himself
and all others similarly situated

      Plaintiffs,

v.

UNITED STATES RAILROAD
RETIREMENT BOARD,

      Defendant.

Civil Action No. 4:25-cv-00238-O

 

**<u>DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT</u>**

NANCY E. LARSON
ACTING UNITED STATES
ATTORNEY

Tami C. Parker
Assistant United States Attorney
Burnett Plaza, Suite 1700
801 Cherry Street, Unit # 4
Fort Worth, TX 76102-6882
Texas Bar No. 24003946
Telephone:  817-252-5200
Facsimile:  817-252-5458
tami.parker@usdoj.gov

Attorneys for Defendant

## Table of Contents

I.   Introduction ................................................................................................... 1

II.  Facts ............................................................................................................... 2

    A.   The U.S. Railroad Retirement Board ................................................. 2

    B.   Logan receipt and use of the RRB-1099-R-Form. ............................. 5

    C.   Logan files suit. ................................................................................. 5

III. Legal Standards ............................................................................................. 8

    A.   Standard of Review ........................................................................... 8

        1.   Rule 12(b)(1) ............................................................................ 8

        2.   Rule 12(b)(6) ............................................................................ 9

IV.  Arguments ................................................................................................... 10

    A.   Logan fails to identify a waiver of sovereign immunity as required to
        establish jurisdiction. ....................................................................... 10

        1.   28 U.S.C. § 1331 does not waive the United States' sovereign
            immunity. ................................................................................ 11

        2.   The Administrative Procedure Act does not provide a waiver
            of sovereign immunity in this instance. ................................... 11

        3.   The Little Tucker Act does not waive the United States'
            sovereign immunity for Logan's claims. ................................. 14

        4.   The Declaratory Judgment Act does not waive the United
            States' sovereign immunity. .................................................... 17

    B.   Logan fails to state a claim for relief ............................................... 18

        1.   Logan fails to state a claim under the APA .............................. 18

        2.   Logan fails to state a claim under the Little Tucker Act. ......... 19

    C.   Logan cannot demonstrate that he is entitled to a preliminary
        injunction. ........................................................................................ 21

D.    Logan's allegations that the RRB is engaged in a "scheme" to
      defraud railroad retirees for its own benefit is wholly without merit. ........ 22

V.    Conclusion ............................................................................................. 23

# Table of Authorities

## Cases

*A.L. Rowan & Son, Gen. Contractors, Inc. v. Dep't of Hous. & Urban Dev.*,
611 F.2d 997 (5th Cir.1980) ............................................................... 11

*Aamer v. Obama*,
742 F.3d 1023 (D.C. Cir. 2014) ............................................................ 21

*Alabama-Coushatta Tribe of Tex. v. United States*,
757 F.3d 484 (5th Cir. 2014) .............................................................. 13

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*,
878 F.2d 806 (5th Cir. 1989) .............................................................. 21

*Anderson v. United States*,
229 F.2d 675 (5th Cir. 1956) .............................................................. 17

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ..................................................................... 9,10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................... 9

*Bowen v. Massachusetts*,
487 U. S. 879 (1988) ........................................................................ 19

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) .............................................................. 10

*Davis v. United States*,
597 F.3d 646 (5th Cir. 2009) ............................................................... 9

*Department of Energy v. Ohio*,
503 U.S. 607 (1992) .......................................................................... 9

*Fisher v. United States*,
402 F.3d 1167 (Fed. Cir. 2005) ......................................................... 16,17

*George v. SI Grp., Inc.*,
36 F.4th 611 (5th Cir. 2022) .............................................................. 10

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*,
    490 F.3d 940 (Fed. Cir. 2007) ...................................................................... 8

*Heckler v Chaney*,
    470 U.S. 821 (1985) ..................................................................................... 11

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*,
    143 F.3d 1006 (5th Cir. 1998) ...................................................................... 8

*Hopi Tribe v. United States*,
    782 F.3d 662 (Fed. Cir. 2015)....................................................................... 16

*Horne v. Dept. of Agric.*,
    569 U.S. 513 (2013) ............................................................................... 19,20

*Jones v. Alexander*,
    609 F.2d 778(5th Cir. 1980) ........................................................................ 17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) .................................................................................. 8,9

*Lee v. Thornton*,
    420 U.S. 139 (1975) ..................................................................................... 18

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ....................................................................... 10

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ..................................................................................... 21

*Me. Cmty. Health Options v. United State*,
    590 U.S. 296 (2020) ..................................................................................... 19

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
    760 F.2d 618 (5th Cir. 1985) ....................................................................... 21

*Richardson v. Morris*,
    409 U.S. 464, 465-66 (1973) ................................................................. 15,16

*Samish Indian Nation v. United States*,
    419 F.3d 1355 (Fed. Cir. 2005)..................................................................... 16

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950) ............................................................ 17

*Steel Co. v. Citizens for a Better Env't.*,
    523 U.S. 83 (1998) ............................................................... 9

*United States v. Bormes*,
    568 U.S. 6 (2012) .......................................................... 15,19

*United States v. Mitchell*,
    463 U.S. 206 (1983) ....................................................... 15,16

*United States v. Navajo Nation*,
    537 U.S. 488 (2003) ........................................................... 16

*United States v. Navajo Nation*,
    556 U.S. 287 (2009) ........................................................... 15

*Voluntary Purchasing Groups v. Reilly*,
    889 F.2d 1380 (5th Cir. 1989) ........................................... 9,11

*Webster v. Doe*,
    486 U.S. 592 (1988) ........................................................... 12

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .............................................................. 21

## Statutes, Rules, and Other Authorities

5 U.S.C. § 551(13) ................................................................. 13
5 U.S.C. § 701(a) .................................................................. 11
5 U.S.C. § 701(a)(2) ............................................................... 11
5 U.S.C. § 701(b)(2) ............................................................... 13
5 U.S.C. § 702 ............................................................... 10,12,18
5 U.S.C. § 704 ..................................................................... 13
18 U.S.C. § 1331 ................................................................... 10
20 C.F.R. § 216.31 ................................................................. 2
20 C.F.R. § 260.1. ................................................................ 20

26 U.S.C. § 86(d)(4) ......................................................................... 2

26 U.S.C. § 6050G ........................................................... 3,12,13,19

26 U.S.C. § 6050G(a)(1-4) ............................................................. 3

26 U.S.C. § 7433 .................................................................... 4,19

26 U.S.C. § 7422(a) ....................................................................... 14

28 U.S.C. § 702 .................................................................... 13,18

28 U.S.C. § 1331 ........................................................................... 11

28 U.S.C. § 1346(a)(2) ........................................................... 10,15

45 U.S.C. § 231b(a)(1) ................................................................... 2

45 U.S.C. § 231b(b)(1) ................................................................... 3

45 U.S.C. § 231f(b)(5) ................................................................. 20

45 U.S.C. § 231m .............................................................. passim

45 U.S.C. § 231g ......................................................................... 20

45 U.S.C. § 231m(a) ............................................. 1,3,6,12,16,17

45 U.S.C. § 231n(e) ..................................................................... 23

45 U.S.C. § 231n(j)(5)(F) ............................................................ 23

45 U.S.C. § 231n(l) ...................................................................... 23

45 U.S.C. § 351 ........................................................................... 22

Railroad Retirement and Survivors Improvement Act of 2001, Pub. L. 107-90 ........... 22

Tax Reform Act of 1986, Pub. L. 99–514 ............................... 12, 19

Fed. R. Civ. P. 12(b)(1) ................................................................. 8

Fed. R. Civ. P. 12(b)(6) ................................................................. 9

# I.    Introduction

Plaintiff James Logan, Sr. is a railroad retiree who receives retirement benefits from the Railroad Retirement Board (RRB).[1]  He complains that the IRS-approved Form RRB-1099-R provided to railroad retirees each year fails to clearly distinguish taxable benefits from nontaxable benefits, allegedly resulting in retirees paying more taxes than legally required.  Logan alleges that the RRB's failure to segregate taxable benefits from nontaxable benefits, or at least make clear on the front of Form RRB-1099-R that that it has not undertaken the burden of making this calculation, amounts to an "unauthorized tax" for railroad retirees who fail to appreciate that this calculation must be made.  That, according to Logan, violates fiduciary duties which he alleges are set forth in 45 U.S.C. § 231m(a).  Logan demands declaratory and injunctive relief, and seeks "restitution" from the RRB for taxes he overpaid.  (Doc. No. 13 at 2 (hereinafter "Amend. Complt.").)[2] He also seeks to certify a class of similarly situated RRB annuitants.

But Logan both fails to demonstrate an applicable waiver of sovereign immunity and fails to state a claim for relief.  His claims for declaratory relief fail because he cannot demonstrate an underlying waiver of sovereign immunity that would support a cause of action under the Declaratory Judgment Act.  Logan's claims for "restitution" from the RRB for taxes he overpaid to the IRS fail because he cannot demonstrate a

---

[1] Throughout this report, the initialism "RRB" refers to the agency as a whole, and "Board" refers to the three-member Board that heads the agency.

[2] In response to Defendant's motion to dismiss, Plaintiff filed an amended complaint on June 20, 2025. (Doc. 13.)  The amended complaint is now the operative complaint and is referred to as "Amend. Complt." herein.

waiver of sovereign immunity for monetary damages in this case. And his claims for a

preliminary injunction fail on the merits because he cannot identify a single statute,

regulation, policy, rule or any other legal provision dictating that the RRB take the

actions he demands, thus he cannot demonstrate a substantial likelihood of success on the

merits. Last, Logan fails to meet the necessary elements for certifying a class.[3]

## II.    Facts

### A.    The U.S. Railroad Retirement Board

The U.S. Railroad Retirement Board is an independent agency in the executive

branch of the United States government charged with administering the Railroad

Retirement Act of 1974 (RRA) and the Railroad Unemployment Insurance Act (RUIA)

(collectively, the Acts). 45 U.S.C. §§ 231 et seq., 351 et seq. The RRA provides age and

service-based annuities for employees who have been credited with at least ten years of

railroad service. *See* 20 C.F.R. 216.31. These annuities generally have two components:

Tier I benefits and Tier II benefits. Tier I benefits are equivalent to Social Security. *See*

45 U.S.C. 231b(a)(1); 26 U.S.C. § 86(d)(4). If Tier I benefits exceed the amount which

would be payable if the employee had been covered under Social Security, that portion is

called the non-social security equivalent benefit (NSSEB). Tier II benefits are based

solely on an employee's rail industry service and earnings and are comparable to

retirement benefits like 401ks and pension plan contributions paid over and above social

---

[3] The Court has granted Plaintiff's unopposed motion to extend the time for filing motion for class certification until after the Court rules on the merits of the instant motion to dismiss. (Doc. 11.)

security benefits to workers in other industries.  *See* 45 U.S.C. 231b(b)(1).  Annuities

"are not subject to any tax or garnishment" except as provided in the RRA and the

Internal Revenue Code (IRC).  *See* 45 U.S.C. § 231m.

The Board is required by law to report benefits to the IRS.  Under 26 U.S.C.

§ 6050G, the RRB must file an annual return with the IRS showing (1) the aggregate

amount of RRA benefits, other than Tier 1 railroad retirement benefits, paid to any

individual during the calendar year, (2) the employee's contributions which are treated as

having been paid for purposes of IRC section 72(r), (*i.e.*, the Tier II benefits which are

treated as employee contributions to a qualified pension plan), (3) the name and address

of the individual, and (4) such other information as IRS may require.  26 U.C.S. §

6050G(a)(1-4).  The RRB must also furnish, by January 31 of the year after the return is

made, a written statement to its retirees that shows (1) the aggregate amount of payments

made to the individual, (2) the amounts attributable to employee contributions, and (3)

any other information required by IRS.  26 U.C.S. § 6050G(b)(1-2).  The RRB utilizes

the RRB-1099-R Form to provide this information to its annuitants.  This form is

specifically approved by the IRS.

A portion of Tier II benefits is tax-free.  26 U.S.C. § 6050G does not, however,

mandate that the RRB make that calculation on behalf of its hundreds of thousands of

annuitants and the RRB has not undertaken the burden and expense of performing the

necessary calculations for each of those annuitants.  Instead, the RRB provides the

aggregate amount of benefits received during the reporting period as well as the retiree's

total contributions, and then in explanations found on the back of the same form, provides

guidance for understanding the numbers and how they are reported.  (Doc. 13-1 at

PageID 158.)  In that guidance, annuitants are specifically told that the benefits reported

on the form "may be partially or fully taxable," and that *they* must determine their taxable

RRB income.  (*Id*.)  For example, the RRB-1099-R Form states that Box 7 "Total Gross

Paid" is the sum of Boxes 4, 5, and 6. (Doc. 13-1 at PageID 157.)  But guidance is offered

to understand the information in those boxes.  For example, when describing Box 4, the

"Explanation of Items on the back of Form RRB-1099-R" states:

> The contributory amount paid (NSSEB and/or Tier 2
> payments) may be partially or fully taxable depending on the
> presence and use of the employee contribution amount. The
> amount in Box 4 is the total contributory pension paid for
> 2024 and may be used under the General Rule provisions to
> compute a nontaxable portion of NSSEB and Tier 2
> payments. For more information on the tax treatment of the
> contributory amount paid, see **IRS Publication 575, Pension
> and Annuity Income** and/or I**RS Publication 939, General
> Rule for Pensions and Annuities**.

(Doc. 13-1 at PageID 158 (emphasis in original).)  For Box 3, the "Explanation of Items

on the back of Form RRB-1099-R states:

> **If this box is blank, it means that your contributory
> amount paid and total gross paid are fully taxable. Refer
> to IRS Publication 575, Pension and Annuity Income and
> IRS Publication 939, General Rule for Pensions and
> Annuities**. For more information on the tax treatment and
> how to use the employee contribution amount, expected
> return, and the IRS actuarial tables **contact the IRS or your
> tax preparer for assistance**.

(*Id*. (emphasis in original).) [4]  Thus, annuitants are informed that some portion of the

---

[4] The IRS publication explains that non-taxable portion "is figured when [the] annuity starts and remains
the same each year." IRS Publication 575 at 12. It further explains that the non- taxable portion of Tier II
benefits can be calculated using the employee contribution amount in Box 3 of the RRB-1099-R Form:

numbers set forth on the form may not be subject to taxes and are directed to resources to assist them.

**B.    Logan receipt and use of the RRB-1099-R-Form.**

Logan asserts that he retired in 2018 after 47 years of railroad service. (Amend. Complt. at ¶ 53.) According to Logan, he uses an experienced tax preparer to prepare his taxes each year, and until 2024, the tax preparer reported the entire amount in Box 7 of the Form RRB-1099-R as taxable income because language printed on the IRS-approved form states that the amounts reflected on the form should be reported to the IRS. (Amend. Complt. at ¶¶ 54-56.) Logan alleges that the form does not indicate that only a portion of the income listed is taxable and he and his tax preparer were unaware that additional steps were necessary to determine whether a portion of his benefits was nontaxable. (Amend. Complt. at ¶ 58.) In support of these claims, Logan embeds multiple images of the front of the Form RRB-1099-R, but only attaches a copy of the back of these forms at the end of his appendix. (Doc. 13-1 at PageID 157.)

**C.    Logan files suit.**

On March 11, 2025, Logan filed a complaint in this Court. (*See* Doc. 1.) The complaint sets forth two causes of action: (1) breach of fiduciary duty and (2) unlawful agency action. Logan essentially complains that the RRB-1099-R form is confusing and has caused him, and he presumes others, to pay more in taxes than they were required to

---

"This amount is the employee's cost that you use to figure the tax-free part of the NSSEB and tier 2 benefit you received." IRS Publication 575 at 8.

under the law.  (*See generally* Doc. 1.)  Citing the RRB's purported fiduciary duty to ensure trust funds assets are protected, collected, recorded, and reported appropriately, and to ensure "the correct benefits amounts are being paid to the right people, (*Id*. at ¶¶ 15-16), Logan claimed that the RRB had a duty to perform the necessary calculations on behalf of its beneficiaries.  To establish this duty, Logan relied upon 45 U.S.C. 231m(a), the anti-garnishment provision of the RRA, which exempts RRA annuities from being assigned or subject to any tax other than income tax on any supplemental annuity as defined in the Internal Revenue Code. (*See generally*, Doc. 1 at ¶¶ 44, 74.)  Logan argued that by failing to calculate, and then clearly segregate, taxable from nontaxable income, he and purportedly other annuitants mistakenly overpaid taxes, and thus the RRB was improperly "taxing" nontaxable benefits in violation of that statute.  (*Id*.)  Moreover, because some portion of taxes collected on the taxable portion of RRB benefits is transferred by the IRS back into the Railroad Retirement Account for the benefit of the beneficiaries, Logan repeatedly alleged that the *RRB* improperly collected, withheld, or retained taxes assessed on the non-taxable portion of Tier II benefits because he, and he presumes others, paid taxes on nontaxable benefits. (*Id*. at ¶¶ 70, 74-80, 93.)

On May 30, 2025, Defendant filed a motion to dismiss the complaint.  (Doc. 8.)  Therein, Defendant explained that Logan's complaint was subject to dismissal because he failed to identify a waiver of sovereign immunity as required to establish this Court's jurisdiction.  (*Id*. at 9-16.)  Defendant further explained that even if Logan could overcome the jurisdictional bar—which he could not—Logan failed to state a claim for relief because he could not show that the RRB was required to alter the way it reported

benefits on the RRB-1099-R, and could not demonstrate that any negligent act on the part of employee of the United States caused him injury.  (*Id*. at 16-8.)  Finally, Defendant explained that Logan could not demonstrate that he was entitled to preliminary injunction nor that this case is appropriate for class certification.  (*Id*. at 18-21.)

Logan did not challenge the basis for dismissal set forth in the RRB's motion to dismiss.  Instead, on June 20, 2025, Logan filed an amended complaint.  (Doc. 13.)  The allegations in the amended complaint are largely the same as those asserted in the original complaint, namely that the RRB owes a fiduciary duty to railroad retirees to perform the necessary tax calculations for annuitants.  But the amended complaint adds an alternative argument that the RRB breached its fiduciary duty by the failure to make clear, on the front of the RRB-1099-R, that it had not make that calculation.  (Amend. Complt. at 20-23.)  He seeks a preliminary injunction "requiring the Board to directly, clearly, and effectively communicate to railroad retirees" regarding contents on the RRB-1099-R, in particular the taxability of the Total Gross Paid amount box.  (*Id*. at 23.)

Logan makes a number of demands as relief in this action.  First, he demands declaratory judgments, to include declarations that the RRB (1) lacks legal authority to collect, withhold, or retain or to cause the collection, withholding, or retention of the non-taxable portion of Tier II benefits, (2) violated section 14 of the RRA and its own fiduciary duties by directing railroad retirees to report the entire amount of Tier II benefits to the IRS, (3) violated its fiduciary duties to railroad retirees by failing to ensure they received their correct benefit amounts and by knowingly taking actions that subjected them to an unauthorized tax, and (4) breached its fiduciary duties to Plaintiffs by using

money representing the nontaxable portion of Plaintiffs' Tier II retirement benefits for the Board's own benefit. (Amend. Complt. at ¶¶ 27-28.)  Logan then demands as "restitution" all the amounts that the RRB allegedly unlawfully collected, withheld, or retained or caused to be collected, withheld, or retained due to the purported taxation of non-taxable portions of Tier II benefits, plus interest.  (Amend. Complt. at ¶ 28.)

In addition to the above, Logan seeks several permanent injunctions against the RRB.  (Amend. Complt. at  28-29.)  First, Logan seeks an injunction prohibiting the RRB from collecting, withholding, or retaining, or causing the collection, withholding, or retention of the amount taxed on non-taxable portions of Tier II benefits.  (*Id*.)  He also requiring the RRB to "directly, clearly, and effectively communicate to Plaintiffs that the Total Gross Paid amount on Form RRB-1099-R is not fully taxable," and an injunction requiring the RRB to report the taxable amount of each railroad retiree's Tier II benefits each tax year.  (*Id*.) The amended complaint also seeks to support a class of all railroad retirement beneficiaries. (Amend. Complt. at ¶¶ 113-123.)

### III.    Legal Standards

**A.    Standard of Review**

**1.    Rule 12(b)(1)**

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of*

*Am.*, 511 U.S. 375, 377 (1994); *accord Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause."). A court should presume that a cause of action lies outside of its limited jurisdiction, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citation omitted); *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009).

In a suit against the United States, establishing subject-matter jurisdiction requires a waiver of the United States' sovereign immunity, which must be stated in "unequivocal" terms in a pertinent statute. *Department of Energy v. Ohio*, 503 U.S. 607, 615 (1992). "Waivers of immunity must be construed strictly in favor of the sovereign" and "not enlarged beyond what the language requires." *Id.* (internal quotations and citations omitted); *see also Voluntary Purchasing Groups v. Reilly*, 889 F.2d 1380, 1385 (5th Cir. 1989).

### 2.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The alleged facts must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 As the Supreme Court stated in *Iqbal:*

> A claim has facial plausibility when the plaintiff pleads
> factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct

> alleged. The plausibility standard is not akin to a probability
> requirement, but it asks for more than a sheer possibility that
> a defendant has acted unlawfully. Where a complaint pleads
> facts that are merely consistent with a defendant's liability, it
> stops short of the line between possibility and plausibility of
> entitlement to relief.

*Iqbal,* 556 U.S. at 678 (cleaned up).

The Court must accept the factual allegations of the complaint as true for purposes of deciding the motion, but "'[is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft,* 129 S. Ct. at 1949-50 (quoting *Twombly,* 550 U.S. at 555). Moreover, the Court may consider not only the allegations in the Complaint, but also any documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice. *George v. SI Grp., Inc..*, 36 F.4th 611, 619 (5th Cir. 2022) (citation omitted) (recognizing that the court does not convert a Rule 12 motion into a Rule 56 motion by considering evidence attached to the motion, referred to in the complaint, and central to the plaintiff's claim). In addition, the Court may consider any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000)).

## IV.    Arguments

**A.    Logan fails to identify a waiver of sovereign immunity as required to establish jurisdiction.**

Logan argues that this Court has jurisdiction over his claims pursuant to 18 U.S.C. § 1331, 5 U.S.C. § 702, and 28 U.S.C. § 1346(a)(2) ("Little Tucker Act"). (Amend.

Complt. at 3). He also seeks relief pursuant to the Declaratory Judgment Act, 28 U.S.C.

2201 et seq. As explained below, however, none of these statutes waives the United

States' sovereign immunity in this action.

### 1.    28 U.S.C. § 1331 does not waive the United States' sovereign immunity.

Section 1331 is the "federal question" jurisdiction statute, giving district courts

"original jurisdiction over all civil actions arising under the Constitution, laws, or treaties

of the United States." 28 U.S.C. § 1331. "It is well settled that section 1331 'implies no

general waiver of sovereign immunity.'" *Voluntary Purchasing Groups v. Reilly*, 889

F.2d 1380, 1385 (5th Cir. 1989) (quoting *A.L. Rowan & Son, Gen. Contractors, Inc. v.

Dep't of Hous. & Urban Dev*., 611 F.2d 997, 1000 (5th Cir.1980)). Therefore, it cannot

be relied upon by itself as the basis for jurisdiction over a claim against the United States.

*Id*. at 1385.

### 2.    The Administrative Procedure Act does not provide a waiver of sovereign immunity in this instance.

Logan also fails to establish the Court's jurisdiction under the Administrative

Procedure Act (APA), 5 U.S.C. § 701, et. seq. For the APA to act as a waiver of the

United States' sovereign immunity, Logan must first meet the threshold requirement of

Section 701. *Heckler v Chaney*, 470 U.S. 821, 829 (1985) ("[B]efore any review at all

may be had [under the APA], a party must first clear the hurdle of § 701(a).") That is

because the APA—and its waiver of sovereign immunity—does not apply if the

challenged agency action is "committed to agency discretion." 5 U.S.C. § 701(a)(2)

("This chapter applies, according to the provisions thereof, except to the extent that ...

agency action is committed to agency discretion by law."); *Webster v. Doe*, 486 U.S. 592, 597 (1988) ("[J]udicial review under § 702...is predicated on satisfying the requirements of § 701....").

Logan fails to meet that threshold requirement.  The only statute, regulation, policy, rule or authority cited by Logan to support his claim that the RRB is required to make the calculations demanded in his complaint is 45 U.S.C. § 231m.  (*See generally* Amend. Complt.)  But section 231m(a) is merely an anti-assignment statute which provides that RRA annuities are not subject to a tax other than that portion allowed under the IRC.  Logan has set forth no *facts* suggesting that the RRB is "taxing" any benefit that it should not.  Rather, the facts of his amended complaint only establish that Logan has been paying more taxes than he is required to pay because *he* (and his tax professional) did not follow the provided guidance for how to calculate his taxable.  That the IRS code provides for a portion of the collected taxes to be returned to the RRB's reserves for railroad retirees does not convert the RRB into a taxing authority.

More important, 45 U.S.C. 231m sets forth no nondiscretionary mandate that the RRB must perform calculations of taxable benefits for its annuitants, or how it should explain taxability.  *See generally* 45 U.S.C. § 231m(a).  And Defendant avers that there is no statute, regulation, policy or rule that dictates that the RRB must perform the calculations demanded by Logan.  There was such a rule decades ago, but the Tax Reform Act of 1986 (Tax Reform Act), Pub. L. 99–514, removed the requirement for the RRB to calculate and track the tax-exempt amount of the Tier II portion of a railroad retiree's annuity.  Now, the only statute that dictates what the RRB should report to its

beneficiaries is 26 U.S.C. § 6050G.  But that statute does not require the RRB perform these calculations for its annuitants, nor does it mandate how best to explain taxability to annuitants.  *See* 26 U.S.C. § 6050G.  Thus, it is left to the discretion of the RRB to determine whether to undertake the burden and expense of performing calculations on taxable versus nontaxable portions of RRA benefits, how and where the RRB should explain the tax consequences of amounts set forth on the Form RRB-1099-R.  Logan cannot rely on the APA as a waiver of sovereign immunity.

Additionally, accepting arguendo that that Logan can met the foundational requirement of a non-discretionary duty for purposes section 701 the APA, Logan cannot demonstrate a waiver of sovereign immunity under 28 U.S.C. § 702.  As the Fifth Circuit has explained, there are "two separate requirements for establishing a waiver of sovereign immunity for claims brought pursuant to the general provisions of the section 702 of the APA.  *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 489 (5th Cir. 2014); *see also* 5 U.S.C. §§ 702, 704. Plaintiffs must: (1) identify some final agency action affecting them in a "specific way," and (2) show that they "suffered legal wrong because of the challenged agency action."  *Id.*  Logan's complaint does neither.

First, Logan fails to demonstrate that there was some final "agency action" that affected him in a specific way.  5 U.S.C. §§ 551(13), 701(b)(2).  Indeed, as previously explained, Logan fails to identify *any* statutory or regulatory obligation for the RRB to perform the calculations he demands, and according to Logan, they have been providing information to annuitants in the same manner for decades.  Thus, there has been no final agency action that has suddenly affected Logan.  Rather, Logan has recently learned that

he has been overpaying his taxes and believes that would not have occurred had the RRB, like a different federal agency, voluntarily undertook the responsibility of calculating the taxability of his railroad benefits.[5]  That does not constitute a final agency action for purposes of the APA.  And even if it was a final agency action—which it is not—Logan cannot demonstrate that he suffered some legal wrong *because* of the challenged action. He simply cannot demonstrate that the RRB failed to provide him with the necessary information and guidance he needed to determine whether, and if so what portion of, his retirement benefits were taxable.  Thus to the extent he suffered any "wrong" by overpaying his taxes, it is due to Logan and his tax preparer failing to fully heed the explanations, and consult the guidance, provided on the back of the Form RRB-1099-R.

### 3.    The Little Tucker Act does not waive the United States' sovereign immunity for Logan's claims.

In addition to asserting claims under the APA, Logan alleges a breach of fiduciary duty and unjust enrichment.  (Amend. Complt. at ¶¶ 56, 70-76.)  Relying on 28 U.S.C. 1346(a)(2), known as the "Little Tucker Act", he seeks declaratory, injunctive, and monetary damages in an amount equal to the taxes he overpaid.  (Amend. Complt. at 29.) But the Little Tucker Act does not provide a legal basis for his claims.

---

[5] As Logan explains, the Office of Personnel Management (OPM) changed from reporting an aggregated amount of benefits to performing the calculations for taxable versus non-taxable portions in 2000. (Amend. Complt. at ¶¶ 70-75.)  Because OPM changed its reporting methods, Logan contends that the RRB, a much smaller agency, should do the same.  (*Id.*)  But tellingly, Logan does not suggest that the OPM was legally mandated to make perform those calculations on behalf of its annuitants.  Instead, a study was undertaken to determine whether there was reason to report only the taxable portion of the annuity benefits for newly retired federal employees, and if so, could it be done.  (Amend. Complt. at ¶¶ 66-76.)  OPM allegedly determined that it could be done, and that it would be helpful for its annuitants and the IRS, and thus voluntarily undertook the additional duty.  (Amend. Complt. at 72.)

As an initial matter, Logan's claims that RRB violated its fiduciary duties sounds in tort.  However, the Tucker Act expressly excludes tort claims form its waiver of sovereign immunity. Additionally, the Tucker Act "has long been construed as authorizing only actions for money judgment and not suits for equitable relief against the United States." *Richardson v. Morris*, 409 U.S. 464, 465-66, (1973) (quotations and quoted case omitted); *see also Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980) (the Tucker Act "only applies to suits for money damages"). Therefore, it cannot serve as a basis for seeking Mr. Logan's requests for equitable relief.

With respect to monetary damages, Defendant does not dispute that the United States has waived sovereign immunity for certain civil actions for monetary damages under the Tucker Act and Little Tucker Act.  That waived immunity, however, must be "founded either upon the Constitution, or any Act of Congress," among other things.  *See United States v. Bormes*, 568 U.S. 6, 10 (2012) ("The Little Tucker Act is one statute that unequivocally provides the Federal Government's consent to suit for certain money-damages claims."). Thus, the Little Tucker Act does not "creat[e] substantive rights," but rather it is simply a "jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law.'" *Id.* (footnote omitted) (quoting *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009)).  Because the Little Tucker Act does not create substantive rights, a claimant "must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained."  *United States v. Mitchell*, 463 U.S. 206, 216-17 (1983)).

A substantive right to money damages can be found where a statute "establishes

specific fiduciary or other duties" and can "'fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties [the governing law] imposes.'" *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003) ("*Navajo I*") (quoting *Mitchell*, 463 U.S. at 219) (cleaned up). To demonstrate that the United States has accepted a particular fiduciary obligation, the plaintiff "must identify statutes or regulations that both impose a specific obligation on the United States and 'bear the hallmarks of a conventional fiduciary relationship.'" *Hopi Tribe v. United States*, 782 F.3d 662, 667 (Fed. Cir. 2015) (quoting *Navajo II*, 556 U.S. at 301) (cleaned up).

A statute is generally understood to be money-mandating when the Government does not have any discretion to pay funds once the requirements of the statute are met. *Fisher v. United States*, 402 F.3d 1167, 1175 (Fed. Cir. 2005) (en banc); *Samish Indian Nation v. United States*, 419 F.3d 1355, 1364 (Fed. Cir. 2005). Here, Logan has not identified a statute that imposes a fiduciary obligation on the RRB to calculate and report to the non-taxable portion of his Tier II benefits or to make clearer, on the front of the Form RRB-1099-R instead of the back, that a portion of his Tier II benefits might not be taxable. (*See generally* Amend. Complt.) Nor has Logan identified a statute that prescribes money damages for the breach of those purported obligations. Instead, Logan directs this Court to the RRB's anti-assignment statute, 45 U.S.C. 231m, as the proposed sources of the RRB's fiduciary duty. [6] That statute,

---

[6] Logan also references the Board's annual "Board Performance and Accountability." (Amend. Complt. at ¶ 18.) In those reports, the Board states that it has fiduciary responsibilities to, among other duties, "ensure that the correct benefit amounts are being paid to the right people." (*Id.*) Setting aside for the moment the fact that Logan states no facts suggesting that the Board failed to ensure that was *paid* the correct benefit amounts, language in an accountability report cannot create a waiver of sovereign immunity or create fiduciary duty on the part of the RRB in the absence of an act of Congress.

however, does not set for a requirement to calculate taxable benefits or mention reporting requirements, much provide for money damages against an agency of the United States for any failure to follow such requirements.  (*Id.*)  The absence of a money-mandating source is "fatal" to the Court's jurisdiction.  *Fisher*, 402 F.3d at1172.

### 4.    The Declaratory Judgment Act does not waive the United States' sovereign immunity.

Last, Logan cites the Declaratory Judgment Act (DJA) as a basis for relief in this matter. (Amend. Complt.at ¶ 6.)  It is well settled, however, that although the DJA "created a remedy as to controversies of which the federal courts have jurisdiction," it does not provide the United States' consent to suit.  *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72 (1950) ("[T]he requirements of jurisdiction—the limited subject matters which alone Congress had authorized the District Courts to adjudicate— were not impliedly repealed or modified" by the DJA.); *Jones v. Alexander,* 609 F.2d 778, 781 (5th Cir. 1980) ("The Declaratory Judgment Act is not an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present.") And the DJA does not, in and of itself, waive the United States' sovereign immunity. *See*, *e.g.*, *Anderson v. United States*, 229 F.2d 675, 677 (5th Cir. 1956) ("[T]he Declaratory Judgments Act, 28 U.S.C. § 2201, does not grant any consent of the United States to be sued.").  As such, Logan is required to demonstrate an applicable waiver.  He fails to do so.

The APA does not provide a waiver in this context, as Logan fails to identify an agency action that is not committed to agency discretion.  The Little Tucker Act also does

not provide this waiver, because "[i]n order for a claim to be brought under [] Little Tucker Act, the claim must be for monetary relief; it cannot be for equitable relief, except in very limited circumstances[.]" *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940, 943 (Fed. Cir. 2007); *see Lee v. Thornton*, 420 U.S. 139, 140 (1975) ("The Tucker Act empowers district courts to award damages but not to grant injunctive or declaratory relief."). Finally, the anti-assignment provision of the RRA, 45 U.S.C. 231m, does not provide the applicable waiver under the DJA, as nothing in that statute suggests a private right of action against the RRB.

Logan cannot demonstrate a waiver of sovereign immunity for his claims. As such, he cannot establish jurisdiction in this Court and is not entitled to any declaratory judgments in this action.

**B.      Logan fails to state a claim for relief.**

**1.      Logan fails to state a claim under the APA.**

Should the Court conclude that the APA may provide a waiver of sovereign immunity in this case, Logan's complaint should be dismissed for failure to state a claim. His claims fail under 5 U.S.C. § 702 because he has not set forth sufficient facts giving rise to a plausible claim that he was legally wronged when the RRB provided information that part of his benefits might not be taxable on the back of the RRB-1099-R, but did not perform the calculations for him. Similarly, in light of the information contained in the instructions for the form, Logan fails to set forth sufficient facts giving rise to a plausible claim that RRB directed him, and other similarly situated annuitants, to inaccurately report their taxable income. Finally, Logan fails to set forth any facts giving rise to a

plausible claim that the RRB failed to ensure railroad retirees like Logan received their correct benefit amounts.  That is because the RRB provided the correct benefits.  It was Logan himself who caused those correct benefits to be improperly taxed.

### 2.    Logan fails to state a claim under the Little Tucker Act.

In support of a claim that the RRB breached its fiduciary duty to Logan, Logan argues, essentially, that the RRB could have, and should have, made it easier for its annuitants to report their taxable benefits to the IRS.  But as previously explained, Logan has not identified a statute that imposes a fiduciary obligation on the RRB to report the non-taxable portion of his Tier II benefits or identified a statute that prescribes money damages for the breach of that obligation.  Indeed, Congress specifically removed the requirement for reporting the non-taxable portion of Tier II benefits from the Internal Revenue Code. *See* 26 U.S.C. § 6050G; § 1122(c) of Pub. L. 99-514.

Moreover, even if the Railroad Retirement Act or the Internal Revenue Code were money-mandating statutes—which they are not—"[t]he Tucker Act yields when the obligation-creating statute provides its own detailed remedies, or when the Administrative Procedure Act . . . provides an avenue for relief." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 323-24 (2020) (citing *Bormes*, 568 U. S. at 13, 16; *Bowen v. Massachusetts*, 487 U. S. 879, 900-908 (1988)).  That is because when "a statute contains its own self-executing remedial scheme, [courts] look only to that statute to determine whether Congress intended to subject the United States to damages liability." *Bormes*, 586 U.S. at 11.  For example, in *Horne v. Dep't of Agric.*, 569 U.S. 513 (2013), the Supreme Court held that the Tucker Act was displaced by the

Agricultural Marketing Agreement Act of 1937's comprehensive remedial scheme, which provided for challenges to marketing orders by filing with the Secretary of Agriculture and for federal district court review of the Secretary's ruling. *See Horne*, 569 U.S. at 527-28.

Here, the extent that Mr. Logan claims that he has overpaid his taxes, the Internal Revenue Code contains a remedial scheme for tax overpayments. *See* 26 U.S.C.§ 7433.[7] To the extent that Mr. Logan claims that the Railroad Retirement Board has paid him an incorrect amount for his retirement annuity, the Railroad Retirement Act contains a remedial scheme for annuity underpayment where benefit payment disputes can be filed with the Board and then reviewed in federal courts of appeal. *See* 45 U.S.C. §§ 231f(b)(5), 231g; 45 U.S.C. § 355; 20 C.F.R. § 260.1 *et seq.*

Logan's claims, accepted as true, fail to state a claim for relief under the Little Tucker Act that is plausible on its face. His Little Tucker Act claims should be dismissed.

---

[7] Congress has created a civil action for a refund of improperly collected taxes. *See* 26 U.S.C. § 7433. However, a plaintiff must fulfill certain procedural requirements before suit, such as timely filing of an administrative claim for a refund with the Internal Revenue Service. *See* 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."). Logan has not alleged that he has made a claim for refund or credit with the Secretary of the IRS.

**C.    Logan cannot demonstrate that he is entitled to a preliminary injunction.**

"A preliminary injunction is an extraordinary remedy never awarded as of right."

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Miss. Power &*

*Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). To justify

this "drastic remedy," a plaintiff must make a "*clear showing*" that (1) he has a

substantial likelihood of success on the merits; (2) will suffer irreparable harm without

the requested injunction; (3) the balance of equities tips in their favor; and (4)

preliminary relief serves the public interest.  *Mazurek v. Armstrong*, 520 U.S. 968, 972

(1997).    The "most important factor" is whether the movant has "established a

likelihood of success on the merits."  *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir.

2014).  That said, failure on any one of these elements requires that the motion be

denied.  *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

Here, Logan seeks permanent injunctions (1) "requiring the Board to directly,

clearly, and effectively communicate to railroad retirees that the Total Gross Paid amount

on Form RRB-1099-R is not fully taxable and that further calculations are necessary to

determine the taxable amount", and (2) "requir[ing] the Board [] to report to each retiree

the taxable amount of his or her Tier II benefits" or otherwise state "on the front of Form

RRB-1099-R or through some other direct communication" that taxability has not been

calculated.  (Amend. Complt. at 23-24.)   He cannot, however, demonstrate that he has a

substantial likelihood of success on the merits for either claim.  Specifically, Logan

cannot demonstrate that he is likely to prevail on the merits of a claim seeking to require

that the RRB take on the burden of performing the calculations preferred by Logan but

not mandated by any statute, or prevail on a claim that the RRB is legally obligated to

change a form approved by the IRS by moving language from the back of a form to the

front because Logan believes that will be easier for annuitants to see and understand.

**D.      Logan's allegations that the RRB is engaged in a "scheme" to defraud railroad retirees for its own benefit is wholly without merit.**

Finally, in a bid to support his claim that the RRB is purposefully engaged in a

"scheme" to collect money lawfully belonging to railroad retirees to enrich itself

(Amend. Complt. at 1-2), Logan alleges that "[t]he Board invests tax revenues exceeding

obligatory benefits and administrative costs; in fiscal year 2024, the return was 18.90%."

(Amend. Complt. ¶ 27.)  This allegation is conclusory and false.  Logan provides no *facts*

suggesting that the Form RRB-1099-R that has been in use for decades was designed to

cause railroad retirees to "unwittingly finance[e] the railroad retirement system[.]"

(Amend. Complt at 2.)  He provides no facts suggesting that the Board benefits in some

nefarious manner from taxing annuitants insofar as the amount the RRB can spend on

operating expenses is set by Congress.  And the allegation that RRB is benefitting from

overtaxing annuitants and receiving a rate of return on those benefits of 18% is simply

wrong, as Logan improperly conflates the return on investment of the National Railroad

Retirement Investment Trust with returns on money in the Railroad Retirement Account.

The National Railroad Retirement Investment Trust (NRRIT) was established

pursuant to Section 105 of the Railroad Retirement and Survivors Improvement Act of

2001, Pub. L. 107-90. The NRRIT was created as a non-governmental, tax-exempt entity

that is domiciles in the District of Columbia and has exclusive authority to invest Trust

assets. *See* 45 U.S.C. § 231n(j)(1). The NRRIT can transfer "such amounts as may be necessary to pay benefits" to the Treasury. 45 U.S.C. § 231n(l). Importantly, the RRB and the NRRIT are separate entities. The RRB can bring a civil action against the NRRIT to stop any violations of 45 U.S.C. § 231n, but otherwise has no control over the NRRIT. 45 U.S.C. § 231n(j)(5)(F).  The NRRIT's return on investment in 2024 was, as Logan notes, over 18%.

The Railroad Retirement Account, however, is funded by payroll taxes, income taxes on benefits received, transfers from the NRRIT, and reimbursements from the Social Security Administration. Under the Railroad Retirement Act, the Treasury Department is authorized to invest Railroad Retirement Account funds that have not been transferred to the NRRIT in government securities, *see* 45 U.S.C. § 231n(e), and the RRB has a standing agreement that the Treasury will immediately invest the payroll taxes that come in from the IRS.  The average interest rate generated on these funds is significantly less than the NRRIT's return on investment, and represents the smallest portion of the RRB's Railroad Retirement Account.

## V.    Conclusion

There is no waiver of sovereign immunity for the claims set forth in Logan's Amended Complaint.  Moreover, consideration of the claims on the merits show that they also fail.  For the foregoing reasons, the Court should dismiss Logan's claims against Defendant and grant Defendant all other relief to which Defendant is entitled.

Dated:  July 7, 2025.

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES
ATTORNEY

*/s/ Tami C. Parker*
Tami C. Parker
Assistant United States Attorney
Burnett Plaza, Suite 1700
801 Cherry Street, Unit # 4
Fort Worth, TX 76102-6882
Texas Bar No. 24003946
Telephone:  817-252-5200
Facsimile:   817-252-5458
tami.parker@usdoj.gov

Attorneys for Defendant

## Certificate of Service

On July 7, 2025, I electronically submitted the foregoing document with the clerk

of court for the U.S. District Court, Northern District of Texas, using the electronic case

filing system of the court.  I hereby certify that I have served all parties electronically or

by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


*/s/ Tami C. Parker*
Tami C. Parker
Assistant United States Attorney