# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| JAMES LOGAN, SR., on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>UNITED STATES RAILROAD RETIREMENT BOARD,<br><br>     Defendant. | Civil Action No. 4:25:cv-00238-O |

## <u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS</u>

**WATERS KRAUS PAUL & SIEGEL**
Charles S. Siegel
siegel@waterskraus.com
State Bar No. 18341875
Leslie C. MacLean
lmaclean@waterskraus.com
State Bar No. 00794209
Taryn E. Ourso
tourso@waterskraus.com
State Bar No. 24107315
3141 Hood Street, Suite 700
Dallas, Texas 75219
Telephone:    (214) 357-6244
Fax:          (214) 357-7252

**MACLEAN LAW FIRM**
John R. (Scotty) MacLean, III
State Bar No. 00787942
smaclean@macleanfirm.com
4916 Camp Bowie Boulevard, Suite 100
Fort Worth, Texas 76107
Telephone:    (817) 529-1000
Fax:          (817) 698-9401

**THE DOVE FIRM**
Jeffrey D. Lerner
State Bar No. 12223910
jeff.lerner@thedovefirm.com
524 E. Lamar Boulevard, Suite 230
Arlington, Texas 76011
Telephone:    (817) 462-0006
Fax:          (817) 462-0027

**WICK PHILLIPS GOULD & MARTIN, LLP**
Brant C. Martin
State Bar No. 24002529
brant.martin@wickphillips.com
Colin P. Benton
State Bar No. 24095523
colin.benton@wickphillips.com
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone:    (817) 332-7788
Fax:          (817) 332-7789

*Attorneys for Plaintiff*

# Table of Contents

Introduction.............................................................................................................................1

Facts........................................................................................................................................1

Motion to Dismiss Standards..................................................................................................2

Argument.................................................................................................................................3

     I.     This Court has subject matter jurisdiction because the APA provides a
     waiver of sovereign immunity for Plaintiff's claims. ...........................................3

          A.     Section 701(a)(2)'s "committed to agency discretion"
          exception does not apply because there are meaningful
          standards available to judge the Board's exercise of
          discretion. ...................................................................................................4

          B.     Plaintiff's injury falls within the zone of interests the
          Railroad Retirement Act seeks to protect, therefore he
          need not allege final agency action or a legal wrong to
          establish a waiver of immunity. .................................................................7

     II.     Alternatively, Plaintiff has established a waiver of sovereign immunity
     under the Little Tucker Act. ................................................................................11

     III.     The Board's fiduciary duties are rooted in a federal statutory scheme
     and create a trust relationship between the Board and railroad retirees. ....................16

     IV.     Denial of Plaintiff's claim for a permanent injunction at this stage is
     premature because Plaintiff seeks equitable relief. ..........................................19

Conclusion...........................................................................................................................20

# Table of Authorities

Cases                                                                                           Page(s)

*Alabama-Coushatta Tribe of Texas v. U.S.,*
  757 F.3d 484 (5th Cir. 2014)..................................................................................9
*Amoco Produc. Co. v. Hodel,*
  815 F.2d 352 (5th Cir. 1987)................................................................................ 12
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..............................................................................................3
*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)..............................................................................................3
*BNSF Ry. Co. v. Equal Emp. Opportunity Comm'n,*
  385 F. Supp. 3d 512 (N.D. Tex. 2018)............................................................ 3, 9
*Bowen v. Massachusetts,*
  487 U.S. 879 (1988)..............................................................................................8
*Cheney R. Co. v. R.R. Ret. Bd.,*
  50 F.3d 1071 (D.C. Cir. 1995) ........................................................................... 17
*Cobell v. Norton,*
  240 F.3d 1081 (D.D.C. 2001) ..............................................................................8
*Ellison v. Connor,*
  153 F.3d 247 (5th Cir. 1998)................................................................................4
*Geyen v. Marsh,*
  775 F.2d 1303 (5th Cir. 1985) .............................................................................8
*Grady v. United States,*
  2013 WL 4957344 (Fed. Cl. July 31, 2013).................................................. 12, 16
*Hall v. Louisiana,*
  2014 WL 1431671 (M.D. La. Apr. 14, 2014)..................................................... 19
*Heckler v. Chaney,*
  470 U.S. 821 (1985)..............................................................................................4
*Herbert v. United States,*
  850 F.2d 32 (2d Cir. 1988) ...................................................................................6
*Hisquierdo v. Hisquierdo,*
  439 U.S. 572 (1979)......................................................................................Passim
*Inclusive Communities Project, Inc. v. U.S. Dep't of Hous. & Urb. Dev.,*
  2009 WL 3122610 (N.D. Tex. Sept. 29, 2009)................................................ 4, 8
*ITT Educ. Servs., Inc. v. Arce,*
  533 F.3d 342 (5th Cir. 2008)............................................................................. 19
*James v. City of Dallas,*
  2001 WL 586688 (N.D. Tex. May 22, 2001) .................................................... 19
*Jones v. Alexander,*
  609 F.2d 778 (5th Cir. 1980)................................................................................3
*Loper Bright Enterps. v. Raimondo,*
  603 U.S. 369 (2024)..............................................................................................5

*Lujan v. Nat'l Wildlife Fed.*,
 497 U.S. 871 (1990)..................................................................................................9

*Mach Mining, LLC v. EEOC*,
 575 U.S. 480 (2015)..................................................................................................4

*Navajo Tribe of Indians v. U.S.*,
 624 F.2d 981 (Ct. Cl. 1980)...............................................................................13, 16

*Paterson v. Weinberger*,
 644 F.2d 521 (5th Cir. 1981)....................................................................................3

*Ramming v. United States*,
 281 F.3d 158 (5th Cir. 2001)....................................................................................2

*Reardon v. Am. Airlines*,
 2025 WL 72174 (N.D. Tex. Jan 10, 2025) .............................................................3

*Sheehan v. Army & Air Force Exch. Serv.*,
 619 F.2d 1132 (5th Cir. 1980) ..................................................................................3

*Texas v. Environmental Prot. Agency*,
 137 F.4th 353 (5th Cir. 2025) ...................................................................................5

*Texas v. United States Dep't of Homeland Sec.*,
 123 F.4th 186 (5th Cir. 2024) ...................................................................................8

*U.S. v. Mitchell*,
 463 U.S. 206 (1983)...............................................................................12, 13, 15, 16

*United States v. Jicarilla Apache Nation*,
 564 U.S. 162 (2011) ................................................................................................16

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
 586 U.S. 9 (2018)..................................................................................................4, 5

*White Mtn. Apache Tribe v. Bracker*,
 448 U.S. 136 (1980) ...............................................................................................12

*Whitman v. Am. Trucking Ass'n*,
 531 U.S. 457 (2001)................................................................................................10

Statutes

5 U.S.C. § 551(13) ...........................................................................................................9
5 U.S.C. § 702.............................................................................................................8, 9
28 U.S.C. § 1331 ......................................................................................................1, 3, 4
28 U.S.C. § 1346(a)(2) ..............................................................................................2, 12
45 U.S.C. § 231m(a) ................................................................................................Passim
45 U.S.C. § 231n(k) ..................................................................................................14, 15
Internal Revenue Code of 1986.................................................................................6, 17

**Introduction**

The Railroad Retirement Board moves to dismiss Plaintiff's Amended Complaint on sovereign immunity grounds and for failure to state claims under the APA and the Little Tucker Act. The Board's motion fails to acknowledge, however, its trust relationship with railroad retirees like Plaintiff and the express protections afforded under the Railroad Retirement Act. The Board focuses on Plaintiff's actions and blames *him*—its beneficiary—for being subjected to taxes prohibited by the very statute the Board must administer for *his* benefit. But this lawsuit is not about overpaid taxes. It is about how the Board is failing to fulfill its fundamental fiduciary duties to Plaintiff and other railroad retirees by causing a circumstance that routinely subjects them to unauthorized taxes, effectively denying them benefits to which they are entitled under federal law.

Section 702 of the Administrative Procedure Act ("APA") waives the defense of sovereign immunity for nonstatutory review of Plaintiff's equitable claims under 28 U.S.C. § 1331. For such a waiver to apply, Plaintiff is not required to assert a legal wrong or identify a final agency action because Plaintiff's injury falls within the zone of interests the Railroad Retirement Act seeks to protect. Alternatively, the Little Tucker Act provides a waiver of immunity because the Board breached its fiduciary duties in a manner that caused Plaintiff and other railroad retirees to lose benefits the Board is obligated to ensure they receive. Because Plaintiff sufficiently states claims under both statutes, the Court should deny the Board's motion in its entirety.

**Facts**

On June 20, 2025, Plaintiff filed an amended complaint against the Board seeking

1

declaratory relief, injunctive relief, and restitution, alleging the Board breached its fiduciary duty and violated Section 231m(a) of the Railroad Retirement Act, which the Board administers. *See* Am. Compl., ECF No. 13. Plaintiff alleges Section 702 of the APA and, alternatively, the Little Tucker Act, 28 U.S.C. § 1346(a)(2), provide a waiver of sovereign immunity for his claims. *Id.* ¶ 4. Plaintiff's claims, as well as the claims of each proposed class member, do not exceed $10,000. *Id.* ¶ 5.

In 2018, Plaintiff retired from railroad service after 47 years, during which he contributed a total of $96,635—after taxes—into the Tier II railroad retirement system. *Id.* ¶ 53. He alleges the Board breached its fiduciary duty to him and other railroad retirees and violated, or caused the violation of, 45 U.S.C. § 231m(a) by failing to directly, effectively, or clearly communicate to them (i) that they did not owe taxes on the full amount of Tier II benefits the Board reported to them on Form RRB-1099-R, (ii) the taxable amount of their Tier II benefits, and (iii) whether taxability of their Tier II benefits had been determined. *Id.* ¶¶ 91, 100. He further alleges that by failing to do so, the Board prioritized its own interests by retaining, spending, or investing the unauthorized tax revenue it received as a result, to the detriment of railroad retirees. *Id.* ¶¶ 93, 102. Consequently, Plaintiff and other railroad retirees did not effectively receive all the benefits to which they were entitled, and that money is not available for them to invest or to pay retirement expenses as Congress intended. *Id.*

### Motion to Dismiss Standards

When a 12(b)(1) motion is brought with a 12(b)(6) motion, a district court must address the 12(b)(1) motion first. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). To assess a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a

district court "must presume that factual allegations in the complaint are true and determine whether they establish subject matter jurisdiction." *Reardon v. Am. Airlines*, No. 4:24-cv-00370-O, 2025 WL 72174, at *2 (N.D. Tex. Jan 10, 2025) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).

If the court determines it has subject matter jurisdiction, it must deny a 12(b)(6) motion if the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the pleaded facts allow the court to reasonably infer the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Argument

### I.    This Court has subject matter jurisdiction because the APA provides a waiver of sovereign immunity for Plaintiff's claims.

The APA provides a waiver of sovereign immunity for Plaintiff's claims for nonmonetary relief.[1]

### Section 702 of the APA provides a waiver of sovereign immunity for Plaintiff's equitable action against the Board arising under federal law.

Section 702 of the APA provides a waiver of sovereign immunity for Plaintiff's equitable claims. This Court has held that Section 702 "waives the defense of sovereign immunity for nonstatutory review under section 1331." *BNSF Ry. Co. v. Equal Emp. Opportunity Comm'n*, 385 F. Supp. 3d 512, 524 (N.D. Tex. 2018) (citing *Sheehan v. Army & Air*

---

[1] In its opening brief, the Board argues the Declaratory Judgment Act ("DJA") does not waive sovereign immunity. To be clear, Plaintiff does not claim such a waiver. Rather, the DJA allows for declaratory and equitable remedies in a case over which the Court has jurisdiction. *See, e.g.*, *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980) (the DJA "permits the award of declaratory relief only when other bases for jurisdiction are present.").

*Force Exch. Serv.*, 619 F.2d 1132, 1139 (5th Cir. 1980)). Plaintiff seeks nonstatutory review of the Board's actions outside the APA's general review provisions because his injuries fall within the zone of interests the Railroad Retirement Act seeks to protect. He is therefore entitled to nonstatutory judicial review of the Board's actions because he has been adversely affected or aggrieved by them. Though the Board is correct that 28 U.S.C. § 1331 does not waive the government's sovereign immunity, the APA provides a waiver for nonstatutory review under 28 U.S.C. § 1331 because Plaintiff only seeks nonmonetary relief.

A.  **Section 701(a)(2)'s "committed to agency discretion" exception does not apply because there are meaningful standards available to judge the Board's exercise of discretion.**

Section 701(a)(2)'s rare exception to judicial review based on action committed to agency discretion does not apply here. The Supreme Court has "long applied a strong presumption favoring judicial review of administrative action." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (quoting *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 489 (2015)). While the APA's waiver of sovereign immunity does not apply when agency action is committed to agency discretion by law, this exception "is very narrow and applies only in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Inclusive Communities Project, Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, No. 3:07-CV-0945-O, 2009 WL 3122610, at *6 (N.D. Tex. Sept. 29, 2009) (citing *Ellison v. Connor*, 153 F.3d 247, 251 (5th Cir. 1998)) (internal quotations marks omitted). "Stated differently, judicial review is unavailable only 'if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Id.* (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). As a result, the Section 701(a)(2)

exception is rarely used. *Weyerhaeuser Co.*, 586 U.S. at 23-24 ("To give effect to § 706(2)(A) and to honor the presumption of review, we have read the exception in § 701(a)(2) quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.").

The Board fails to contend with Plaintiff's overarching breach of fiduciary duty claim. Instead, it insists that because 45 U.S.C. § 231m(a) does not *require* the Board to calculate retirees' taxable benefits or to inform them about tax consequences, the Board has unreviewable discretion not to do so. But "[a] court could never determine that an agency abused its discretion if all matters committed to agency discretion were unreviewable." *Id.* at 23. Therefore, it is not enough that the Board generally has discretion; rather, the Board can only claim sovereign immunity if there is no meaningful standard by which to judge the Board's actions. This Court, of course, must "'exercise [its] independent judgment in construing statutes administered by agencies' and 'in deciding whether an agency has acted within its statutory authority . . . Congress expects courts to do their ordinary job of interpreting statutes, *with due respect* for the views of the Executive Branch.'" *Texas v. Environmental Prot. Agency*, 137 F.4th 353, 365 (5th Cir. 2025), quoting *Loper Bright Enterps. v. Raimondo*, 603 U.S. 369, 402-03, 406, 412 (2024) (emphasis the Fifth Circuit's). The fact that there is "no nondiscretionary mandate that the RRB must perform calculations of taxable benefits for its annuitants, or how it should explain taxability[,]" motion at 12, does not insulate the RRB's action from review. Rather, as the Supreme Court made clear last year in *Loper Bright*, and as the Fifth Circuit stressed just months ago in *Texas v. EPA*, courts "must

5

do their ordinary job of interpreting statutes . . . ."

In fact, there are multiple standards by which the Court can judge whether the Board violated 45 U.S.C. § 231m(a) or its fiduciary duties. For example, as explained *infra*, the Board's fiduciary duties are rooted in the Railroad Retirement Act statutory scheme, which Congress created both to protect railroad retirees' benefits before *and* after disbursement and "to ensure that neither federal nor state tax collectors would encroach on the distribution of benefits." *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 583–84 (1979) (footnote omitted). When taken as a whole, the Railroad Retirement Act creates a trust relationship between the Board and its retirees—and the Board expressly acknowledges that it owes them fiduciary duties.[2] Congress was unambiguous:

> Except as provided in subsection (b) of this section and the Internal Revenue Code of 1986, notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process *under any circumstances whatsoever*, nor shall the payment thereof be anticipated.

45 U.S.C. § 231m(a) ("Assignability; exemption from levy") (emphasis added); *see also Herbert v. United States*, 850 F.2d 32, 35 (2d Cir. 1988) ("Moreover, in other instances in which Congress has intended to exempt certain benefits from taxation, it has done so in unambiguous terms . . . Similarly, with respect to the tax treatment of railroad retirement annuities, Congress provided that "no annuity or supplemental annuity shall be assignable or be *subject to any tax* ... under any circumstance whatsoever[.]"") (emphasis in original).

---

[2] *See, e.g.*, *Railroad Retirement Board Performance and Accountability Report*, RR. RET. BD. (Fiscal Year 2024), at 13, 15, https://www.rrb.gov/sites/default/files/2024-11/PAR2024_0.pdf (last accessed July 22, 2025) ("2024 Account. Rep.").

Thus, the Board's actions can be judged by various standards, including: (i) the nature and intent of the Railroad Retirement Act to administer benefits and to protect them from levy; (ii) the Act's creation of a trust relationship between the Board and railroad retirees; (iii) common law trust and fiduciary principles; and (iv) the Board's own acknowledgement of its fiduciary duties, which it publicly holds itself out as having. Accordingly, because there are various standard by which to judge the Board's conduct, Plaintiff meets Section 701's threshold requirement—this case is not the rare exception where there is no law to apply.[3]

### B. Plaintiff's injury falls within the zone of interests the Railroad Retirement Act seeks to protect, therefore he need not allege final agency action or a legal wrong to establish a waiver of immunity.

The Railroad Retirement Act, and the Board's fiduciary duties rooted in the Act, are designed to protect Plaintiff's entitlement to his Tier II benefits. *See Hisquierdo*, *supra*, 439 U.S. at 586  For that reason, the Act allows for few exceptions to Section 231m(a)'s bar on the assignability of railroad retirement benefits and their exemption from levy. Plaintiff's injury is a direct result of the Board's failure to adhere to its fiduciary duties to and to Section 231m(a), which it administers as Plaintiff's fiduciary. To remediate that injury, Plaintiff seeks only nonmonetary relief in the form of injunctive and declaratory relief, as

---

[3] The Board argues there was previously a rule requiring it to calculate the taxable amount but that Congress removed this requirement. As discussed below, however, that rule applied to a different tax scheme that did not distribute the employee contributions over the life of the annuity. Instead, retirees paid no taxes at all on Tier II benefits until they recouped the entire employee contribution. After that, all Tier II benefits were taxable and no complex calculations were required. *See The Taxation of Railroad Retirement Act Annuities*, RR. RET. BD., at 4, https://www.rrb.gov/sites/default/files/2023-04/TXB-85%20%2803-23%29.pdf (last accessed July 22, 2025) ("The EEC recovery under the Three-Year Rule covers annuitants with annuity beginning dates before July 2, 1986. Under the Three-Year Rule, NSSEB and Tier 2 payments became fully taxable only after the total of these benefits paid to all annuitants on the employee's wage record equaled the EEC amount.").

well as restitution, entitling him to nonstatutory judicial review under the waiver provided for by Section 702 of the APA. *See* 5 U.S.C. § 702; *Bowen v. Massachusetts*, 487 U.S. 879, 892-93 (1988) (declaratory and injunctive relief, as well as restitution, "are not 'money damages' as that term is used in the law").[4] Section 702 waives the government's sovereign immunity for equitable actions against the government for breach of trust. *See Cobell v. Norton*, 240 F.3d 1081, 1094-95 (D.D.C. 2001) (Section 702 granted sovereign immunity where plaintiffs' claims relied upon common law trust principles because plaintiffs sought "specific relief other than money damages, and federal courts have jurisdiction to hear such claims under the APA").

"Congress waived sovereign immunity for suits seeking nonmonetary relief through nonstatutory judicial review of agency action." *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985). Section 702 "generally waives" the government's sovereign immunity. *Texas v. United States Dep't of Homeland Sec.*, 123 F.4th 186, 201 (5th Cir. 2024) (quoting *Geyen*, 775 F.2d at 1307). "Every one of our sister circuits has construed § 702's plain language as a waiver of sovereign immunity for all equitable actions, regardless of whether they arise under the APA or other federal law." *Id.* at 201-02 (collecting cases).

A plaintiff establishes a waiver of sovereign immunity under Section 702 if (1) an agency action has affected him in a specific way and (2) he has been "adversely affected or aggrieved by that action within the meaning of a relevant statute." 5 U.S.C. § 702 ("[a] person . . . adversely affected or aggrieved by agency action within the meaning of a relevant

---

[4] Because Plaintiff seeks nonmonetary relief under an APA waiver of sovereign immunity, he has no other adequate remedy at law. *See, e.g., Inclusive Communities Project, Inc.*, 2009 WL 3122610, at *8 (no other adequate remedy at law where plaintiff sought nonmonetary relief).

statute, is entitled to judicial review thereof."); *BNSF Ry. Co.*, 385 F. Supp. 3d at 525. To be adversely affected or aggrieved within the meaning of a relevant statute means the plaintiff's injury, or the adverse effect upon him, "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 883 (1990).

"This type of waiver applies when judicial review is sought pursuant to a statutory or non-statutory cause of action that arises completely apart from the general provisions of the APA." *Alabama-Coushatta Tribe of Texas v. U.S.*, 757 F.3d 484, 489 (5th Cir. 2014). For this type of waiver, there is no "finality" requirement for the agency action at issue. *Id.* ("The requirement of 'finality' comes from § 704 and has been read into § 702 in cases where review is sought pursuant only to the general provisions of the APA."). Rather, all that is required is "agency action" as set forth by 5 U.S.C. § 551(13), *id.*, which defines agency action as including "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[,]" 5 U.S.C. § 551(13). Additionally, a plaintiff asserting this type of waiver does not need to allege a "legal wrong." *See BNSF Ry. Co.*, 385 F. Supp. 3d at 525 (discussing the two distinct types of claims for which Section 702 waives immunity—(i) claims brought pursuant to the APA's general provisions, which require a legal wrong due to final agency action and (ii) claims arising apart from the APA's general provisions where the plaintiff has been adversely affected or aggrieved by agency action, which need not be final).

The Board only analyzes sovereign immunity under the APA for one of the two distinct types of claims for which Section 702 waives immunity—a claim brought pursuant

to the APA's general provisions, which would require a plaintiff to assert a legal wrong due to final agency action. But Plaintiff does not pursue a claim under the APA's general review provisions; instead, he brings nonmonetary claims for the Board's breach of fiduciary duty and violation of 45 U.S.C. § 231m(a) arising under federal law.

Plaintiff alleges the Board failed to directly, effectively, or clearly communicate crucial information to him and other retirees, causing them to incur taxes strictly prohibited by 45 U.S.C. § 231m(a), to the Board's benefit and to their detriment. *See* Am. Compl. ¶¶ 86-106. The Board's failure to fulfill its role as a fiduciary, which caused repeated violations of 45 U.S.C. § 231m(a), are reviewable agency actions. *See Clarke v. Commodity Futures Trading Comm'n*, 74 4th 627, 637 (5th Cir. 2023) ("'Agency action' has a broad sweep; the term 'is meant to cover comprehensively every manner in which an agency may exercise its power.'") (citing *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 478 (2001)). Because Plaintiff's claims are rooted in federal law and independent of the APA's general review provisions, he does not need to assert a legal wrong or final agency action to establish a waiver of immunity.

Rather, what Plaintiff must show is that he was aggrieved by the Board's actions within the meaning of a relevant statute—that his injuries fall within the zone of interests sought to be protected by the Railroad Retirement Act, specifically 45 U.S.C. § 231(m)(a), and the Board's resulting fiduciary duties. Plaintiff meets that requirement. As he alleged in the Amended Complaint, because the Board failed in its fiduciary duties, he was taxed without statutory authorization on the portion of his Tier II benefits representing his employee contributions. *See* Am. Compl. ¶ 98. As a result, that money is not available for him to invest or to pay for retirement expenses. And because revenue from taxes on Tier II

10

benefits ultimately goes back into the Board's accounts for it to invest or to pay benefits, the Board—Plaintiff's fiduciary—acts in its own best interest instead of Plaintiff's by continuing to fail to effectively communicate vital benefit-sparing information to its beneficiaries.[5]

Sparing railroad retirees' benefits from taxation is the entire point of 45 U.S.C. § 231m(a). The Railroad Retirement Act and the Board's resultant fiduciary duties seek to protect Plaintiff from losing part of his benefits—whether before or after he receives them. According to its plain language, Congress intended 45 U.S.C. § 231m(a) to strongly protect benefits from legal process and unauthorized taxes, even after benefits are paid. *Hisquierdo*, *supra*, 439 U.S. at 583, 586 ("Section 231m plays a most important role in the statutory scheme . . . it ensures that the benefits actually reach the beneficiary . . . . Section 231m goes far beyond garnishment."). The Board admits it owes the railroad community fiduciary duties, including to ensure "the correct benefit amounts are being paid to the right people."[6] Because Plaintiff's injury—being deprived of Tier II benefits due to unlawful levy—falls squarely within the zone of interests 45 U.S.C. § 231m(a) seeks to protect, he has established the "adversely affected or aggrieved" type of waiver under Section 702 of the APA.

## II. Alternatively, Plaintiff has established a waiver of sovereign immunity under the Little Tucker Act.

Even if the APA does not provide a waiver of sovereign immunity, the Little Tucker Act waives sovereign immunity for Plaintiff to recoup the money he lost due to the Board's

---

[5] See United States Railroad Retirement Board 2024 Annual Report, RR. RET. BD., at 9 under "Federal Income Tax Transfers," https://rrb.gov/sites/default/files/2024-09/2024_Annual_Report.pdf (last accessed July 22, 2025) ("Revenue derived from taxing regular railroad retirement payments in excess of Social Security equivalent benefits is transferred to the RR Account.").

[6] *See, e.g.*, 2024 Account. Rep., at 22.

breach of fiduciary duty and violation of federal law. The Little Tucker Act waives sovereign immunity for "[a]ny other civil action or claim against the United States, not exceeding $10,000, founded upon either the Constitution, or any Act of Congress, or any regulation of an executive department[.]" 28 U.S.C. § 1346(a)(2). The claim "must be one against the United States for money." *Amoco Produc. Co. v. Hodel*, 815 F.2d 352, 360 (5th Cir. 1987).

As the Board admits, motion at 15-16, when a statutory and regulatory scheme establishes the government's fiduciary obligations to manage resources belonging to its beneficiaries, these statutes and regulations "can fairly be interpreted as mandating compensation by the Federal Government for damages sustained." *U.S. v. Mitchell*, 463 U.S. 206, 226 (1983); *see also Grady v. United States*, No. 13-15C, 2013 WL 4957344, at *2 (Fed. Cl. July 31, 2013) ("Plaintiff correctly asserts that this court has Tucker Act jurisdiction over claims founded on a fiduciary duty the government owes an individual or group of citizens.").

In *supra*, *Mitchell*, the United States Supreme Court affirmed Tucker Act jurisdiction in a case against the government for breach of fiduciary duty, where its fiduciary obligations were established by statutes and regulations giving the government full responsibility for managing land and resources for Indians' benefit. *See Mitchell*, 463 U.S. at 224. Congress created the statutory and regulatory scheme so that tribes would "retain the benefits derived from the harvesting and sale of reservation timber." *Id.* at 224-25, quoting *White Mtn. Apache Tribe v. Bracker*, 448 U.S. 136, 149 (1980). The fiduciary relationship between the government and the Indians arose because of the control the government assumed over the Indians' property. *Id.* at 225. Therefore, when the government breached its fiduciary duties, Tucker

Act jurisdiction was appropriate:

> Because the statutes and regulations at issue in this case clearly establish
> fiduciary obligations of the Government in the management and operation of
> Indian lands and resources, they can fairly be interpreted as mandating
> compensation by the Federal Government for damages sustained. *Given the
> existence of a trust relationship, it naturally follows that the Government should be liable in
> damages for the breach of its fiduciary duties.* It is well established that a trustee is
> accountable in damages for breaches of trust.

*Id.* at 226 (emphasis added).

So too here. The Little Tucker Act waives sovereign immunity for Plaintiff's claims because, as *Mitchell* teaches, the government is liable for breaching its fiduciary duties to him and causing him to lose a portion of the benefits it is charged with ensuring he receives and keeps. As in *Mitchell*, Plaintiff's fiduciary duty claims arise from a federal statutory scheme giving the Board full responsibility and control to manage and administer the railroad retirement program. Congress enacted this statutory scheme, including 45 U.S.C. § 231m(a)'s anti-levy provision, to protect railroad retirees' benefits even after they are paid. As the Supreme Court put it in *Hisquierdo*, "Section 231m plays a most important role in the statutory scheme . . . it ensures that the benefits actually reach the beneficiary . . . . Section 231m goes far beyond garnishment." 439 U.S. at 583, 586.

Again, the Board does not dispute, and in fact, expressly acknowledges its fiduciary duties.[7] Accordingly, Section 231m(a) can be fairly interpreted as mandating payment to Plaintiff to remedy the Board's breach of duty and violation of the statute. That is so even if the statutory scheme itself does not expressly spell out the government's fiduciary duties. *See Navajo Tribe of Indians v. U.S.*, 624 F.2d 981, 987 (Ct. Cl. 1980) ("[W]here the Federal

---

[7] *See, e.g.*, 2024 Account. Rep., at 13, 15.

Government takes on or has control or supervision over tribal monies or properties, the fiduciary relationship normally exists with respect to such monies or properties (unless Congress has provided otherwise) even though nothing is said expressly in the authorizing or underlying statute (or other fundamental document) about a trust fund, or a trust or fiduciary connection.").

Therefore, contrary to the Board's assertion, Little Tucker Act jurisdiction does not require that the statutory scheme explicitly spell out all the things the Board must do to uphold its fiduciary duties. The Railroad Retirement Act makes clear there is no circumstance under which benefits representing employee contributions can be taxed. When the Board administers the Act as a fiduciary entrusted with ensuring that retirees receive and enjoy their benefits without the threat of unauthorized levy, Plaintiff establishes a waiver of sovereign immunity by alleging the Board—his fiduciary—created the circumstance that caused a prohibited levy on his benefits. And not only did the Board's actions cause a prohibited levy, but the Board also benefited when the money retirees lost as a result of its actions went back into its accounts to invest or to pay benefits.[8]

The Board's argument that "Congress specifically removed the requirement for reporting the non-taxable portion of Tier II benefits" is a red herring with no import. The

---

[8] See United States Railroad Retirement Board 2024 Annual Report, RR. RET. BD., at 9 under "Federal Income Tax Transfers," https://rrb.gov/sites/default/files/2024-09/2024_Annual_Report.pdf (last accessed July 22, 2025) ("Revenue derived from taxing regular railroad retirement payments in excess of Social Security equivalent benefits is transferred to the RR Account."); 45 U.S.C. § 231n(k); NRRIT Annual Management Report for Fiscal Year 2024, NAT'L RR. RET. INV. TR.., at Introductory Statement, https://rrb.gov/sites/default/files/2025-03/NRRIT_Annual_Management_Report_FY2024.pdf (last accessed July 22, 2025).

previous requirement applied to a different tax scheme that did not distribute the employee contribution over the life of the annuity—instead, retirees paid no taxes at all on Tier II benefits until they recovered their entire employee contribution. After that, all Tier II benefits were taxable and no complex calculations were required as they are in Plaintiff's case. Therefore, the removal of the previous requirement is irrelevant to Plaintiff's claims implicating the current tax scheme that in no way resembles the old tax scheme.[9]

Refusing to grapple with its fiduciary duties to retirees, the Board insists Plaintiff can either claim a tax overpayment with the IRS or file a claim with the Board for annuity underpayment. Motion at 20. Neither addresses Plaintiff's claims. Plaintiff does not seek a tax refund from the IRS; rather, he seeks money from the Board that he lost—and that was ultimately returned to the Board's accounts—due to the Board's failure to fulfill its fiduciary duties to him. And Plaintiff does not claim the Board underpaid his annuity. Rather, he claims the Board's failure to provide basic information about the taxability of his annuity benefits caused him—and others—to lose benefits they already received. As the Supreme Court aptly put it, "[i]t would be anomalous to conclude that these enactments create a right to the value of certain resources when the [government] lives up to [its] duties, but no right to the value of the resources if the [government]'s duties are not performed." *Mitchell*, *supra*, 463 U.S. at 227. By acting in its own best interest instead of Plaintiff's, the Board flouted Congress's intent that the Railroad Retirement Act protect Plaintiff's benefits from unauthorized levy after receipt. Because the Board's relationship with railroad retirees bears all the hallmarks of a traditional fiduciary relationship, it follows that, as in *Mitchell*, the

---

[9] *See supra*, at n.3.

government has waived sovereign immunity under the Little Tucker Act for Plaintiff's claims based upon the Board's breach of trust and violation of federal law.

### III.    The Board's fiduciary duties are rooted in a federal statutory scheme and create a trust relationship between the Board and railroad retirees.

As discussed above, the Board's fiduciary duties are rooted in a federal statutory scheme, and the Board publicly holds itself out as a fiduciary to the railroad community. A fiduciary obligation arises "if it is plain from the relevant statutes or regulations that the government has accepted such a responsibility." *Grady*, *supra*, 2013 WL 4957344, at *3 (citing *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 173 (2011) (any fiduciary duties the government owes are "defined and governed by statutes rather than the common law")). A statutory scheme gives rise to fiduciary duties when it establishes the elements of a trust relationship, *id.* at *4, namely a trustee (the United States), (2) a beneficiary, and (3) a trust corpus. *Mitchell*, 463 U.S. at 225-26. Importantly, a statutory scheme can give rise to fiduciary duties "even though nothing is said expressly in the authorizing or underlying statute (or other fundamental document) about a trust fund, or a trust or fiduciary connection." *Id.* at 225 (quoting *Navajo Tribe of Indians*, 624 F.2d at 987). In other words, it is the nature of the relationship between the government and its beneficiaries that matters.

The Board administers the railroad retirement program, safeguards its assets, and is tasked with ensuring retirees receive the benefits Congress granted them. The Board understands it has fiduciary responsibilities because it admits as much in its publicly available reports.[10] Indeed, its relationship with railroad retirees bears all the hallmarks of a traditional

---

[10] *See, e.g.*, 2024 Account. Rep., at 22.

fiduciary relationship: there is a trustee (the Board), a beneficiary (railroad retirees), and a trust corpus (the Railroad Retirement Account).

As Section 231m(a) shows, the Railroad Retirement Act has a "broad purpose" and "protective character," *Cheney R. Co. v. R.R. Ret. Bd.*, 50 F.3d 1071, 1078 (D.C. Cir. 1995):

> Except as provided in subsection (b) of this section and the Internal Revenue Code of 1986, notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process **under any circumstances whatsoever**, nor shall the payment thereof be anticipated.

45 U.S.C. § 231m(a) (emphasis added). By failing to take reasonable steps to ensure Plaintiff recoups his employee contributions—nearly $100,000—the Board "diminish[ed] the portion of the benefit Congress has said should go to the retired worker alone, and threaten[ed] to penalize one whom Congress sought to protect"—directly conflicting with 45 U.S.C. § 231m(a). *Hisquierdo*, *supra*, 439 U.S. at 590. And when the money collected as a result of the Board's breach is returned back to the Board's accounts, the Board further breaches its fiduciary duty by investing that money or using it to pay benefits—it is no longer available for the railroad retiree to invest or to pay for retirement expenses. This conflict of interest incentivizes the Board to maintain the status quo by refusing to effectively communicate to railroad retirees that not all their Tier II benefits are taxable.[11]

The Board has the information necessary to tell retirees what portion of their Tier II benefits is taxable—it just refuses to. Form RRB-1099-R, which the Board sends retirees

---

[11] In its opening brief, the Board asserts Plaintiff alleges it engaged in a scheme to "defraud" retirees for its own benefit. Motion at 22. To be clear, Plaintiff's Amended Complaint does not accuse the Board of fraud.

each year, deviates from the IRS's standard Form 1099-R and from Form CSA 1099R, which the government sends to millions of annuitants receiving retirement benefits under the Civil Service Retirement System and the Federal Employees' Retirement System. *See* Am. Compl. ¶¶ 75, 78. On the front of those forms, the retiree is told either (i) the taxable amount of their benefits or (ii) that the taxable amount has not yet been determined. In fact, the IRS instructs entities furnishing Form 1099-R to recipients to "make every effort to compute the taxable amount."[12]

On the other hand, the front of the Board's Form RRB-1099-R does not tell the retiree either of those facts, thereby failing to prevent retirees like Plaintiff from reporting the entire Total Gross Paid amount as taxable income, resulting in a net benefit less than the Board is required to ensure the retiree receives. The small fine print on the back of Form RRB-1099-R does not communicate this information, and the Board does not otherwise provide it through some other direct communication. The Board's failure to take standard steps to ensure railroad retirees effectively receive the correct benefit amount is contrary to the Railroad Retirement Act's purpose, and its receipt of millions of dollars of resulting unauthorized tax revenue is a clear conflict of interest.

In sum, Plaintiff states a plausible claim that the Board breached its fiduciary duties to Plaintiff, which are rooted in the Railroad Retirement Act. The Board's breach of duty caused him to lose money that was rightfully his—money the Act was designed to ensure he

---

[12] *Instructions for Forms 1099-R and 5498*, INT. REV. SERV., at 13, https://www.irs.gov/pub/irs-pdf/i1099r.pdf (last accessed July 22, 2025).

received and kept. Accordingly, Plaintiff's Amended Complaint sufficiently states claims

against the Board for its breach of duty and resulting violations of 45 U.S.C. § 231m(a).

## IV.    Denial of Plaintiff's claim for a permanent injunction at this stage is premature because Plaintiff seeks equitable relief.

The Board analyzes Plaintiff's claim for a permanent injunction under the standards

for a *preliminary* injunction, which Plaintiff has not requested. It argues that Plaintiff "cannot

demonstrate that he is likely to prevail on the merits . . ." Motion at 21. But to obtain a

permanent injunction, Plaintiff need not make such a showing. Rather, the elements of a

permanent injunction are: "(1) that [plaintiff] has suffered an irreparable injury; (2) that

remedies available at law, such as monetary damages, are inadequate to compensate for that

injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a

remedy in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction." *ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008).

At the motion to dismiss stage, dismissal of a request for a permanent injunction is

premature because Plaintiff has pleaded that he seeks an equitable remedy. *See James v. City of

Dallas*, No. CA 398-CV-0436-R, 2001 WL 586688, at *3 (N.D. Tex. May 22, 2001)

("Plaintiffs do not have to assert and prove each element necessary for a permanent

injunction in their pleadings in order for a request for injunctive relief to survive a motion to

dismiss. Rather, Plaintiffs only have to plead that they are seeking an equitable remedy,

which they have done . . . ."); *see also Hall v. Louisiana*, No. CIV.A. 12-00657-BAJ, 2014 WL

1431671, at *4 (M.D. La. Apr. 14, 2014) (denying request to dismiss plaintiff's claim for

permanent injunctive relief at motion to dismiss stage as "a ruling on [plaintiff]'s request for

permanent injunctive relief would be premature"). Accordingly, the Court should decline to dismiss Plaintiff's claim for a permanent injunction at the motion to dismiss stage.

## Conclusion

The Court should deny the Board's motion because (i) the government waived sovereign immunity under the Administrative Procedure Act and, alternatively, the Little Tucker Act and (ii) Plaintiff's well-pleaded allegations plausibly give rise to an entitlement to relief.

Respectfully submitted,

*/s/ Charles S. Siegel*
Charles S. Siegel
siegel@waterskraus.com
State Bar No. 18341875
Leslie C. MacLean
lmaclean@waterskraus.com
State Bar No. 00794209
Taryn E. Ourso
tourso@waterskraus.com
State Bar No. 24107315

**WATERS KRAUS PAUL & SIEGEL**
3141 Hood Street, Suite 700
Dallas, Texas 75219
Telephone:     (214) 357-6244
Fax:               (214) 357-7252

*and*

Brant C. Martin
State Bar No. 24002529
brant.martin@wickphillips.com
Colin P. Benton
State Bar No. 24095523
colin.benton@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone:     (817) 332-7788
Fax:              (817) 332-7789

*and*

Jeffrey D. Lerner
State Bar No. 12223910
jeff.lerner@thedovefirm.com

**THE DOVE FIRM**
524 E. Lamar Boulevard, Suite 230
Arlington, Texas 76011
Telephone:     (817) 462-0006
Fax:              (817) 462-0027

*and*

John R. (Scotty) MacLean, III
State Bar No. 00787942
smaclean@macleanfirm.com

**MACLEAN LAW FIRM**
4916 Camp Bowie Boulevard, Suite 100
Fort Worth, Texas 76107
Telephone:     (817) 529-1000
Fax:              (817) 698-9401

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2025, a true and correct copy of the foregoing was e-filed with the Clerk of the United States District Court for the Northern District of Texas and served on all counsel of record through the court's electronic filing system.

*/s/ Charles S. Siegel*
Charles S. Siegel