IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JAMES LOGAN, SR., on behalf of himself and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES RAILROAD RETIREMENT BOARD,<br><br>Defendant. | Civil Action No. 4:25-cv-00238-O |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

The gravamen of Plaintiff James Logan, Sr.'s complaint is that the Railroad Retirement Board (RRB) could have, and in Logan's opinion should have, undertaken the obligation to calculate the taxable portion of the benefits it distributed to its retirees, or, at a minimum, changed the language in an IRS-approved form to make clearer to the retirees that they needed to perform this calculation. (*See generally*, Doc. 13 (hereinafter "Amend. Complt.".)  But nothing in the Amended Complaint, or Plaintiff's response in opposition to dismissal (Doc. 20 (hereinafter "Resp.")), evinces a clear waiver of the United States' sovereign immunity for such a claim. Because Logan both fails to demonstrate an applicable waiver of sovereign immunity and fails to state a claim for relief, the complaint should be dismissed.

A. **The Administrative Procedure Act does not provide a waiver of sovereign immunity in this instance, nor can Plaintiff state a claim under its provisions.**

1. **The decision whether to perform calculations related to taxable or nontaxable income is committed to agency discretion.**

Logan fails to establish the Court's jurisdiction under the Administrative Procedure Act (APA), 5 U.S.C. § 701, et. seq. As explained in Defendant's motion, for the APA to act as a waiver of the United States' sovereign immunity, Logan must first meet the threshold requirement of Section 701. *Heckler v Chaney*, 470 U.S. 821, 829 (1985) ("[B]efore any review at all may be had [under the APA], a party must first clear the hurdle of § 701(a)."). That is because the APA—and its waiver of sovereign immunity—does not apply if the challenged agency action is "committed to agency discretion." 5 U.S.C. § 701(a)(2) ("This chapter applies, according to the provisions thereof, except to the extent that ... agency action is committed to agency discretion by law."); *Webster v. Doe*, 486 U.S. 592, 597 (1988) ("[J]udicial review under § 702...is predicated on satisfying the requirements of § 701....").

Logan does not dispute that the RRB has discretion with respect to the decision whether to undertake the calculations necessary to determine the taxable versus nontaxable portions of RRB retirement benefits. Instead, Logan argues that his claim falls outside APA's section 701's limitation on the United States' waiver of sovereign immunity because "there are multiple standards by which the Court can judge whether the Board violated 45. U.S.C. § 231m(a) or its fiduciary duties." (Resp. at 6.) Specifically, Logan argues that the RRB's actions can be judged by the "the nature and intent of the Railroad Retirement Act to administer benefits and to protect them from

levy." (*Id*.) But this argument ignores the fact that Congress, which enacted 45 U.S.C. § 231 m(a) and one time specifically mandated that RRB calculate and report taxable income, specifically removed that requirement in the Internal Revenue Code of 1986. Plaintiff calls this a "red herring" because it applied to a different scheme (Resp. at 14-15), but Plaintiff is incorrect. When Congress changed to the current tax scheme, it also changed what the RRB was required to report. *See* 26 U.S.C. § 6050G; § 1122(c) of Pub. L. 99-514. If Congress had wanted the RRB to continue to undertake the responsibility for performing the calculations for taxable versus nontaxable benefits under the new tax scheme, it could have so directed. Instead, Congress removed that requirement. Logan is essentially arguing that the RRB's discretionary duty to its retirees should be judged under the APA by the intent of a statute Congress enacted, ignoring the fact that Congress also specifically removed from the RRB the duty to act in the manner Logan alleges the statute demands. That argument fails.

Logan's argument similarly fails with respect to considering the RRB's failure to calculate taxable from nontaxable under a more amorphous fiduciary duty standard.[1] Plaintiff does not define fiduciary duty should one in fact exist. Rather, in Plaintiff's view, since Congress did not intend for any portion of RRB beneficiaries' benefits to be

---

[1] Plaintiff suggests that the RRB has essentially conceded that it owes a fiduciary duty to its beneficiaries. (Resp. at 11-12.) That is not an accurate statement of the RRB's position. The RRB does not concede that it *is* a fiduciary within the legal meaning of that term, and Plaintiff has offered no legal authority to the contrary. Like all federal agencies, the Board has a general obligation to execute the duties imposed on it by Congress and not waste the funds appropriated by Congress. There is no allegation here that it failed in those respects. Instead, Plaintiff alleges that the RRB has a non-statutory fiduciary duty to make sure annuitants benefits are protected even after they are paid. (*See*, *e.g.*, Resp. at 13.)

taxed, [2] the RRB, out of loyalty to its beneficiaries, has a duty to (1) assume its retirees will not read the full IRS-approved Form RRB-1099-R and its instructions such as to understand that not all of their benefits are subject to taxation; (2) assume that its retirees, and any tax professionals they may retain to assist, will be unable to follow those directions and perform the necessary calculations to ensure they do not report nontaxable benefits as taxable, and thus (3) undertake the responsibility upon itself to affirmatively make the necessary calculations on behalf of the beneficiaries because at least one federal agency, the Office of Personnel Management, determined that it would be easy enough for *it* to do so. (*See generally,* Amend. Complt.)

Not surprisingly, Plaintiff cites no authority that such a broad reading of a fiduciary duty should be applied here such as to provide a standard by which to "judge" the RRB's decision to not perform these calculations. Congress has directed that the RRB is required to calculate and distribute to retirees benefits they have earned. Plaintiff has not alleged that the RRB failed to accurately calculate his benefits and distribute them to him. Congress has directed the RRB to report certain tax information to annuitants pursuant to 26 U.S.C. § 6050G. Logan has not, and cannot, allege that the RRB is violating the statute that tells the RRB what tax information it must report. But in his role as a taxpayer, *Plaintiff* is responsible for determining the and paying the correct amount

---

[2] Of course, it is incorrect as a matter of law that no portion of an RRB retiree's benefits is subject to tax. While emphasizing one portion of 45 U.S.C. § 231m(a), "under any circumstances whatsoever", Plaintiff repeatedly ignores the first clause "[e]xcept as provided in subsection (b) of this section and the Internal Revenue Code of 1986." The Internal Revenue Code of 1986 provides for the taxation of a portion of Tier II benefits.

**Defendant's Reply in Support of Motion to Dismiss– Page 4**

of income tax. 26 U.S.C. § 6011(a) (". . . any person made liable for any tax imposed by this title, or with respect to the collection thereof, shall make a return or statement according to the forms and regulations prescribed by the Secretary."); IRS Publication 2105 Rev 5- 2023 at 2 (". . . each of us is responsible for filing a tax return when required and for determining and paying the correct amount of tax."); *Pollard v. Commissioner*, T.C. Summary Opinion 2003-40, No. 5980-01S, 2003 Tax Ct. Summary LEXIS 39, at *4 (Apr. 22, 2003) (tax payer bears "the responsibility for paying the correct amount of tax."). The Internal Revenue Service collects income taxes. *See* 26 U.S.C. § 6301.

That the RRB could undertake additional duties on its part to make it easier for retirees to do their taxes each year does not deprive the RRB of the discretion to decide whether to perform those calculations. Nor does it provide a clear standard by which to judge the RRB's decision to not perform those actions. Plaintiff fails to meet the predicate standard for review under the APA.[3]

### 2.   Logan fails to demonstrate that he has been injured by any agency "action."

Section 702 of the APA provides that "[a] person suffering legal wrong because of

---

[3] Logan fundamentally misstates the circumstances of *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 573 (1979), by leaving out an inconvenient portion of the opinion. (Resp. at 6, 7.) *Hisquierdo* reversed a ruling by the Supreme Court of California that applied California's community property rules and awarded an interest in an ex-husband's expectation of railroad benefits to an ex-wife. *Id.* at 573. In discussing the scope of 45 U.S.C. § 231m, the Supreme Court stated that the non-taxability portion of that statute was "designed in part to ensure that neither federal nor state tax collectors would encroach on the *distribution of benefits*." *Id.* at 584 (emphasis added).[1] Logan has not alleged that the RRB failed to properly distribute his benefits or that the benefits have not reached him. Instead, Logan alleges that the RRB has a duty to go beyond its statutory requirements *after* the benefits have already been correctly distributed.

*agency action* or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. 702.  (Emphasis added).  Although Plaintiff argues that "final" agency action is not required for judicial review of nonstatutory claims (Resp. at 7), he cannot dispute that judicial review under the APA is limited to "agency action." The APA defines agency action as "includ[ing] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. 551(13); *see also* 5 U.S.C. 701(b)(2). All of the specific examples of "agency action" given in Section 551(13) are discrete products of a focused decision-making process by the agency—such as the promulgation of a rule,[4] the issuance of an order,[5] the grant or denial of a license,[6] the imposition of a sanction or the refusal to impose one,[7] or the allowance or withholding of relief.[8]  Likewise, the term "failure to act" is properly understood to refer to a failure to promulgate a rule, issue an

---

[4] See 5 U.S.C. 551(4) (defining "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency").

[5] *See* 5 U.S.C. 551(6) (defining "order" as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making").

[6] *See* 5 U.S.C. 551(8) (defining "license" as including "the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission").

[7] *See* 5 U.S.C. 551(10) (defining "sanction" as including "the whole or a part of an agency *** prohibition, requirement, limitation, or other condition affecting the freedom of a person"; "withholding of relief"; "imposition of penalty or fine"; "destruction, taking, seizure, or withholding of property"; "assessment of damages, reimbursement, restitution, compensation, costs, charges, or fees"; "requirement, revocation, or suspension of a license"; or "other compulsory or restrictive action").

[8] *See* 5 U.S.C. 551(11) (defining "relief" as including "the whole or a part of an agency *** grant of money, assistance, license, authority, exemption, exception, privilege, or remedy"; "recognition of a claim, right, immunity, privilege, exemption, or exception"; or "other action on the application or petition of, and beneficial to, a person").

**Defendant's Reply in Support of Motion to Dismiss– Page 6**

order, or take other discrete action of the sort identified in Section 551(13).

Here, while acknowledging that an agency action is required (Resp. at 9), Logan fails to identify any agency action, as defined by the APA, that the RRB was statutorily required to take, but failed to do so. Instead, Logan's argument is essentially that the RRB could have, and in his opinion should have, better explained the tax consequences of the benefits it provides to retirees. But the APA does not authorize programmatic attacks on "day-to-day agency management." *Norton v. S. Utah Wilderness All.,* 542 U.S. 55, 67 (2004). And a plaintiff cannot "seek *wholesale* improvement of [government] program[s] by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 891 (1990).

Plaintiff has not alleged that the RRB failed to accurately calculate his benefits and distribute them to him. (*See generally, Amend. Complt.*; *see also Resp.*) He has not alleged that the RRB allowed any portion of those benefits to be assigned or levied in lieu of distributed them to him. (*Id.*) He has not, and cannot, plausibly allege that the RRB is violating 26 U.S.C. § 6050G, which tells the RRB what tax information it must report about the benefits it provides. (*Id.*) He has not, and cannot, demonstrate that the RRB has recently passed some rule, order, license, sanction, relief that adversely affected him, or was required to so but failed. (*Id.*) Thus, Plaintiff cannot demonstrate that he has been aggrieved by any agency action as defined by the APA. And in turn, he can neither establish that the APA provides a waiver of sovereign immunity in this case nor state a claim for relief under the APA.

**B.     The Little Tucker Act does not waive the United States' sovereign immunity for Logan's monetary claims.**

Finally, in addition to asserting claims under the APA, Logan alleges a breach of fiduciary duty and unjust enrichment, which is classically sound under tort. (Amend. Complt. at ¶¶ 56, 70-76.) Relying on 28 U.S.C. 1346(a)(2), known as the Little Tucker Act, he seeks monetary damages in an amount equal to the taxes he overpaid. But the Little Tucker Act does not provide a legal basis for his claims.

First, as explained in Defendant's motion to dismiss, "[t]he Tucker Act yields when the obligation-creating statute provides its own detailed remedies, or when the Administrative Procedure Act . . . provides an avenue for relief." (Motion at 19 (citing *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 323-24 (2020)).) Logan fails to address the preclusive implications of *Horne v. Dep't of Agric.*, 569 U.S. 513 (2013) on his claim given that both the Internal Revenue Code and the Railroad Retirement Act contain remedial schemes. (*See* Doc. 19 at 19, 20.) Instead, he merely argues that he should be allowed to sue the RRB because the IRS returns tax money to the Board for the future benefit of retirees. (Resp. at 15.)

Second, the Tucker Act "has long been construed as authorizing only actions for money judgment and not suits for equitable relief against the United States." *Richardson v. Morris*, 409 U.S. 464, 465-66, (1973) (quotations and quoted case omitted); *see also Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980) (the Tucker Act "only applies to suits for money damages"). Therefore, it cannot serve as a basis for seeking equitable relief to the extent Plaintiff pleads the Little Tucker Act as an alternate form of the waiver of sovereign immunity because the APA does not provide an applicable waiver of sovereign immunity in this case.

Third, a substantive right to money damages under the Tucker Act can be found only where a statute "establishes specific fiduciary or other duties" and can "'fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties [the governing law] imposes.'" *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003) ("*Navajo I*") (quoting *Mitchell II*, 463 U.S. at 219) (alterations in original). To demonstrate that the United States has accepted a particular fiduciary obligation, the plaintiff "must identify statutes or regulations that both impose a specific obligation on the United States and 'bear the hallmarks of a conventional fiduciary relationship.'" *Hopi Tribe v. United States*, 782 F.3d 662, 667 (Fed. Cir. 2015) (quoting *Navajo II*, 556 U.S. at 301) (alteration in original).[9]

Here, Logan has not established a "specific fiduciary or other duties" and can "'fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties [the governing law] imposes.'" *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003) ("Navajo I") (quoting *United States v. Mitchell*, 463 U.S. 206, 219 (1983) ("Mitchell II")) (alterations in original). As established above, 45 U.S.C. § 231m does not impose a duty on the RRB to report the non-taxable portion of Tier II benefits, nor does it impose a specific duty to protect annuitants' benefits after they have been paid. While Logan repeatedly says that the RRB has a duty to protect benefits after they have been properly distributed, Logan cites to nothing in the RRA or the RUIA actually imposing that duty. Moreover, nothing in 45 U.S.C.

---

[9] The Board provides annual "Board Performance and Accountability." (Amend. Complt. at ¶ 18.) In those reports, the Board states that it has fiduciary responsibilities to, among other duties, "ensure that the correct benefit amounts are being paid to the right people." (*Id*.) Setting aside for the moment the fact that Logan states no facts suggesting that the Board failed to ensure that Logan was paid the correct benefit amount, this language does give rise to a waiver of sovereign immunity or create a cause of action for breach of fiduciary duty in the absence of fiduciary duty created by Congress.

**Defendant's Reply in Support of Motion to Dismiss– Page 9**

§ 231m is money-mandating insofar as it deprives the Government of any discretion to pay funds once the requirements of the statute are met. *Fisher v. United States*, 402 F.3d 1167, 1175 (Fed. Cir. 2005) (en banc). (*Id*.) The absence of a money-mandating source is "fatal" to the Court's jurisdiction. *Fisher*, 402 F.3d at 1172.

### C. Logan cannot demonstrate that he is entitled to a permanent injunction.

Lastly, Plaintiff asserts that the RRB incorrectly construed his request for a permanent injunction as a request for a preliminary injunction. (Resp. at 19.) Having so noted, he asked the Court to hold his request in abeyance at the motion to dismiss stage. (*Id*.) Plaintiff is correct that Defendant misconstrued his demand, but his demand nonetheless fails. Logan seeks permanent injunctions (1) "requiring the Board to directly, clearly, and effectively communicate to railroad retirees that the Total Gross Paid amount on Form RRB-1099-R is not fully taxable and that further calculations are necessary to determine the taxable amount", and (2) "require[ing] the Board [] to report to each retiree the taxable amount of his or her Tier II benefits" or otherwise state "on the front of Form RRB-1099-R or through some other direct communication" that taxability has not been calculated. (Amend. Complt. at 23-24.) Because he cannot demonstrate a waiver of sovereign immunity for these claims and is not otherwise entitled to the relief he seeks, the request for a permanent injunction fails.

## II.   Conclusion

There is no waiver of sovereign immunity for the claims set forth in Logan's Amended Complaint. Defendant prays the complaint will be dismissed in its entirety.

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

/s/ Tami C. Parker
Tami C. Parker
Assistant United States Attorney
Burnett Plaza, Suite 1700
801 Cherry Street, Unit # 4
Fort Worth, TX 76102-6882
Texas Bar No. 24003946
Telephone:  817-252-5200
Facsimile:   817-252-5458
tami.parker@usdoj.gov

Attorneys for Defendant

## Certificate of Service

On August 18, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Tami C. Parker
Tami C. Parker
Assistant United States Attorney

**Defendant's Reply in Support of Motion to Dismiss– Page 11**